[Civ. No. 51023. Second Dist., Div. Five. Feb. 24, 1978.]

SOUTHERN CALIFORNIA DISTRICT COUNCIL, ASSEMBLIES OF GOD, Plaintiff and Appellant, v.
SHEPHERD OF THE HILLS EVANGELICAL LUTHERAN CHURCH et al., Defendants and Respondents.

952

---

**COUNSEL**

Roland Maxwell and Robert K. Wright for Plaintiff and Appellant.

Thomas Moore and Albert Hansen for Defendants and Respondents.

## OPINION

KAUS, P. J.—Plaintiff appeals from a judgment in favor of defendants, entered after the granting of defendants' motion for summary judgment.

FACTS

The facts, as revealed by the pleadings and the declarations filed in support of and in opposition to the motion for summary judgment are these:

In early 1969 the defendant church (Shepherd) owned two parcels in the northwest corner of Foothill Boulevard and Santa Anita Avenue in the City of Arcadia. Parcel 1, the corner property, was occupied by a gas station leased to Atlantic-Richfield (ARCO). Parcel 2, to the west, was improved with an existing church building and a parking lot. Physical access to the parking lot was gained by a driveway which entered parcel 2 on Foothill and another driveway which entered the Shepherd property on Santa Anita and reached the parking lot by crossing parcel 1.

In 1962, when Shepherd desired to build its church on parcel 2, it had to request a zone variance from the City of Arcadia. The request was accompanied by a map which showed the driveway across parcel 1 to the parking lot on parcel 2. The variance was granted on condition that "the entire development shall conform substantially with the plot plan and ultimate site plan submitted."

Negotiations for the purchase of parcel 2 by plaintiff started sometime in early 1969. The Reverend T. C. Cunningham, its assistant superintendent, negotiated on behalf of plaintiff, Shepherd was represented by the defendant Fox, a member of Shepherd's church council, as well as a real estate salesman. The negotiations resulted in a deposit receipt, dated April 29, 1969, which recited inter alia: "There are no oral agreements not contained herein." On March 5, 1969, an escrow was opened which recited that "the closing of this transaction is conditional upon seller receiving approval of the City of Arcadia Planning Commission to split that portion of Lot 5, Tract 948 as described above." That condition was necessary because parcel 1 included the westerly five feet of lot 5, the corner lot. Very shortly after the escrow plaintiff went into possession of parcel 2 as lessee. Title eventually passed to plaintiff in early 1970.

In the meanwhile Shepherd had sold parcel 1—the corner lot minus the westerly five feet thereof—to ARCO. Just exactly when title passed to ARCO is not revealed by the record. It does appear, however, that when plaintiff was negotiating for the purchase of parcel 2, it was aware that a sale to ARCO was at least in progress.

None of the written documentation in connection with the sale of parcel 2 refers to the driveway across parcel 1. Plaintiff, however, maintains that certain representations concerning the driveway were made by Fox and Mosier, the treasurer of Shepherd. In opposition to defendants' motion for summary judgment, Cunningham filed a declaration to the effect that during the "discussions leading up to the sale of the property . . . I told [Fox] that plaintiff would not purchase the property if the driveway to Santa Anita Avenue was not also available for our use . . . . He assured me that we would have use of the driveway from the church property to Santa Anita Avenue and that the City of Arcadia required it to be there." Olga Woodworth, a retired minister of plaintiff, gave a deposition in which she testified that Fox had told her that "there would be no problem with [the driveway], that it would be available . . . that the City would not permit them to close the driveway." Later when several members of the plaintiff's congregation were shown the property, Mosier, in answer to a question, also said that there would be no problem about the driveway, that it would be available.

After the escrow had been opened, Shepherd applied for the lot split to the planning commission, which granted it on May 13, 1969, but only on condition that the 1962 conditions to the variance "be continued in full force and effect including the provision for a driveway easement to Santa Anita Avenue to be recorded prior to final approval." On May 22, 1969, Mosier wrote a letter to the planning commission in which he protested the condition, pointing out that the plaintiff church would generate less traffic than had been anticipated for Shepherd, when the variance had been requested seven years earlier. On June 10, 1969 the planning commission met again and deleted "the requirement to provide for an easement to Santa Anita Avenue . . . as a lot split condition."

Cunningham declared in opposition to Shepherd's motion for summary judgment, that he was aware of the planning commission proceedings relating to the lot split which were "in accordance with the purchase agreement." However neither he nor anyone else connected with plaintiff ever received any notification that Shepherd was protesting the

May 13, 1969, ruling or that a rehearing before the planning commission had been scheduled for June 10.

The impact of these 1969 events was not felt for some time. Plaintiff and its parishioners used access across parcel 1 without hindrance until February 7, 1974, when ARCO threatened to chain off the driveway. It was then that plaintiff learned that it had no legal right to its use.

Fox's declaration denies the oral representations allegedly made to Cunningham, Woodworth and other members of plaintiff's congregation. Amazingly, Mosier filed no declaration.

## DISCUSSION

The motion for summary judgment must, of course, be viewed within the framework of plaintiff's complaint. It purports to state three causes of action. The first pleads, as relevant, that the statements concerning the driveway, allegedly made by Fox and Mosier, were knowingly false. The second cause of action is based on the same statements, but merely claims that they were made without "sufficient or reasonable ground for believing them to be true." The third cause of action zeros in on defendants' conduct in relation to the lot split and their failure to keep plaintiff informed of the proceedings particularly, of course, Mosier's successful attempt to delete the condition relating to the driveway.

Relevant, too, is that all parties before us cheerfully concede that plaintiff had no right to maintain the driveway as against ARCO.[1]

We have reached the conclusion that the summary judgment must be reversed. In plain language, this is what the record indicates: At the time of the negotiations leading up to the purchase, Fox, a person experienced in real estate transactions and a member of Shepherd's church council, told representatives of plaintiff that if plaintiff purchased parcel 2, it would have the use of the driveway across parcel 1 and that the City of Arcadia required it to be there. Mosier made similar representations. It is to be noted that Fox did not use technical language. Thus he did not talk about easements, express or by implication, or licenses. Nor, it is inferrable, did plaintiff care—it simply wanted the use of the driveway

---

[1]According to the record, an action plaintiff filed against ARCO was dismissed in 1974. This action was then filed on February 6, 1975.

for itself and its congregation. When they were made, the statements were partially true: the City of Arcadia had, indeed, required the driveway ever since 1962. Defendant, however, used the occasion of the lot split application to induce the city to delete the driveway requirement. As we see it it is quite immaterial that plaintiff church knew that a lot split application would be submitted to the city. What it did not know was that Shepherd would use the proceedings to delete the 1962 access condition. While no case factually similar has been cited or found, we have no doubt that the condition of good faith implied in every contract, (*Redke* v. *Silvertrust* (1971) 6 Cal.3d 94, 100 [98 Cal.Rptr. 293, 490 P.2d 805]; *Masonite Corp.* v. *Pacific Gas & Electric Co.* (1976) 65 Cal.App.3d 1, 9 [135 Cal.Rptr. 170]) demanded, minimally, that defendants notify plaintiff that they were approaching the City of Arcadia with a request to delete a condition which had expressly been represented to be in effect.

The question is not what rights to the continued maintenance of the driveway condition plaintiff had as against the City of Arcadia or against ARCO, whose property was burdened by it. Perhaps none. It is, rather, that knowledge of what was going on would have provided plaintiff with a clear basis for rescinding its contract to buy parcel 2 and prevented whatever damage plaintiff can prove as arising from the fact that the purchase agreement became executed four full years before plaintiff became aware of any problem.

Defendants claim that they were under no duty to disclose the planning commission proceedings to plaintiff. This contention rests on their assumption that there is no triable issue with respect to the existence of a confidential relationship between themselves and plaintiff.[2] The record does not bear them out. The complaint alleges that none of the persons who dealt with defendants were experienced in real estate dealings. They placed complete confidence in Shepherd's representatives because they knew that one of them was an experienced real estate broker and that Shepherd, like plaintiff, was "a recognized and established Christian church organization worthy of trust and belief and represented by persons of integrity." Defendants' declarations do not even attempt to negative these allegations which are adequate to tender the issue. (*Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 308, fn. 11

[2]We do not imply that under the circumstances a confidential relationship was essential. Defendant's authorities—e.g., *Roach* v. *Hostetter* (1941) 48 Cal.App.2d 375 [119 P.2d 749]—are not convincing.

[61 Cal.Rptr. 661, 431 P.2d 245]; *O'Neil* v. *Spillane* (1975) 45 Cal.App.3d 147, 153 [119 Cal.Rptr. 245].) The fact that at the trial plaintiff will have the burden of proving the nature of the relationship, is immaterial at this point. (*Barnes* v. *Blue Haven Pools* (1969) 1 Cal.App.3d 123, 127 [81 Cal.Rptr. 444].)

Parenthetically, in view of the confidential relationship claimed by plaintiff, it does not matter whether the third cause of action is viewed as one for breach of contract or fraud. If it is the former, the failure to disclose defendants' activities before the planning commission would have tolled the running of the statute of limitations. (See, generally, *Baker* v. *Beech Aircraft Corp.* (1974) 39 Cal.App.3d 315, 322-323 [114 Cal.Rptr. 171] and authorities cited therein.) If the cause of action is viewed as being based on fraud, the statute of limitations did not start to run until it was discovered in February 1974, one year before the action was filed. The timing by ARCO in its shut-off threat smacks of conspiracy.

We note, of course, that the essential element of the third cause of action is a question of fact which, in view of the conflicting declarations in the record, promises to be hotly disputed at the trial: Did Fox and Mosier make the statements concerning the availability of the driveway to plaintiff's representatives? What Shepherd did in connection with the lot split application, does not really appear to be in dispute. It therefore seems highly unlikely that the first two causes of action which are based on the same representations will really matter. Nevertheless we shall deal with them briefly.

Defendants, of course, claim that since plaintiff does not have a scrap of writing with respect to the alleged statements of Fox and Mosier and particularly since the deposit receipt contains an integration clause, no cause of action for fraud was stated, nor do the submissions in connection with defendants' motion for summary judgment disclose a triable issue.

As far as the integration point is concerned, *Kett* v. *Graeser* (1966) 241 Cal.App.2d 571, 574 [50 Cal.Rptr. 727] is a sufficient basis for holding that a summary judgment is improper. (See also *Masterson* v. *Sine* (1968) 68 Cal.2d 222, 225-228 [65 Cal.Rptr. 545, 436 P.2d 561].)

■    More serious is defendants' reliance on the provision of the statute of frauds which requires a written memorandum for "an agreement . . . for the sale of real property, or of an interest therein; . . ." (Civ. Code, § 1624, subd. 4.) Defendants characterize the statements concerning the availability of the driveway across parcel 1 as a means of ingress to the parking lot on parcel 2 as an agreement to convey an interest in real property and then rely on a series of cases, starting with *Kroger* v. *Baur* (1941) 46 Cal.App.2d 801, 803 [117 P.2d 50] for the proposition that the statute of frauds cannot be nullified "by the transparent device of predicating a tort action upon the invalid oral promise on the ground that the promisor did not intend to perform it, . . . To license such a circuitous procedure to evade the provisions of such legislation would be to nullify and destroy its wholesome effect and the protection it affords against fraud." This statement was followed and applied in *Beach* v. *Arblaster* (1961) 194 Cal.App.2d 145, 163 [14 Cal.Rptr. 854] and *Keely* v. *Price* (1972) 27 Cal.App.3d 209, 215 [103 Cal.Rptr. 531]. It was distinguished in *Kett* v. *Graeser, supra,* on the basis that the fraudulent promise related to a collateral agreement which did not come within the statute of frauds. (*Id.,* pp. 573-574.)

If it mattered, we might question the vitality of the *Kroger* rule, at least as applied to real property transactions where the party claiming fraud has fully performed his part of the bargain.[3] Plaintiff, however, accepts the rule, as well it might, since it does not apply. In the *Kroger-Beach-Keely* line of cases, the plaintiffs merely alleged that the very promise which the statute of frauds required to be in writing was made

[3]Several considerations point to a demise of the *Kroger* rule, should it ever reach the Supreme Court. In brief: 1. The "better" rule is contra. Comment (c) to section 530 of the Restatement Second of the Law of Torts states that a misrepresentation of one's intention is actionable even "when the agreement is oral and made unenforceable by the statute of frauds, or when it is unprovable and so unenforceable under the parol evidence rule." 2. The broad statement of the *Kroger* rule is difficult to reconcile with the principle that a party may be estopped to assert the statute of frauds where such estoppel is necessary "to prevent fraud that would result from refusal to enforce oral contracts in certain circumstances." (*Monarco* v. *Lo Greco* (1950) 35 Cal.2d 621, 623 [220 P.2d 737]. 3. It is simply untrue that a plaintiff who undertakes to plead and prove actionable fraud is attempting to get around the statute of frauds by a "transparent device." *Kroger* seems to assume the inability of a jury to distinguish between an unkept but honest promise and one which the promisor never intended to perform. The law is otherwise. (*People* v. *Ashley* (1954) 42 Cal.2d 246, 263-264 [267 P.2d 271].) 4. The provision of the statute of frauds which spawned *Kroger* was Civil Code section 1624, subdivision 5, relating to agreements for real estate brokers' commissions. The law has traditionally had little sympathy with the broker who has failed to sign up his client. (E.g., *Augustine* v. *Trucco* (1954) 124 Cal.App.2d 229, 237-238 [268 P.2d 780].)

without intention of performing it. The present case might be analogous if defendant had orally promised that in consideration for the purchase price of parcel 2, it would create an easement across parcel 1. That, however, is not plaintiff's case and no amount of effort by defendants to squeeze it into the *Kroger-Beach-Keely* mold will make it so.

■ What plaintiff claims is very simple: defendants pointed to an existing driveway across parcel 1 and represented that if plaintiff purchased parcel 2, it would acquire the right to continued use of the driveway.[4] This, as we see it, is not an agreement for the sale of an interest in real property, but a statement concerning one of the benefits that would follow plaintiff's acquisition of parcel 2, made as an inducement for the purpose of consummating the sale of that parcel.[5] As such it is quite indistinguishable from the representation held actionable in *Bobak* v. *Mackey* (1951) 107 Cal.App.2d 55 [236 P.2d 626], where the seller fraudulently represented that the buyer would be able to carry on a manufacturing business, because the land was in a C-2 zone.[6] *Bobak,* incidentally, also disposes of the objection that such a representation is one of law.[7]

The vital point is that, given the physical location of the driveway, normally the right to cross parcel 1 is precisely the legal consequence

[4] The precise allegation of the complaint is that plaintiff was "orally informed by defendants Mosier and Fox with regard to the status of the driveway across Parcel 1, that there were no problems; that as purchaser plaintiff and its congregations would have ingress and egress, by means of the driveway, across Parcel 1 and that seller would guarantee it as part of the purchase of Parcel 2."

[5] We note, parenthetically, that the first two causes of action may be imperfectly pleaded, in that plaintiff never alleges in so many words that defendants' statements were made for the purpose of inducing the sale. (See Chadbourn et al., Cal. Pleading (1961) § 987.) The matter can be easily corrected by amendment.

[6] Of particular interest, because it is the mirror image of this case is *Jarvis* v. *Singleton* (1933) 129 Cal.App. 250 [18 P.2d 382]. In that case there was a path across the land which the plaintiff was purchasing from the defendant. The defendant told plaintiff that "it was nothing but a path that people took liberty to take and travel over . . . [plaintiff] could just go ahead and plow it up . . ." It later turned out that plaintiff's neighbors had used the path adversely for many years and that an easement by prescription had arisen. In *Jarvis* nobody even thought of torturing the defendant's representation into a promise to convey a fee unburdened by an easement and, as such, coming within the statute of frauds.

[7] Plaintiff's allegations of a confidential relationship are pleaded with even greater particularity as far as the fraud causes of action are concerned. Again we note that defendants made no effort to negative them. (See *DeZemplen* v. *Home Federal S. & L. Assn.* (1963) 221 Cal.App.2d 197, 202 [34 Cal.Rptr. 334]; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 452.)

which would flow from a transfer of parcel 2. ARCO's interest in parcel 1 aside, an easement by implication would have arisen in favor of the transferee of parcel 2. (*Laux* v. *Freed* (1960) 53 Cal.2d 512, 520-521 [2 Cal.Rptr. 265, 348 P.2d 873].) The parties appear to agree that this did not happen here because of ARCO's possession of parcel 1 first as lessee and later as owner,[8] but under all the circumstances, defendants' representations that plaintiff would have continued use of the driveway can, at this point, be viewed as an opinion by one who professes to have superior knowledge that the easement would arise in spite of ARCO (*DeZemplen* v. *Home Federal S. & L. Assn., supra*), or as a statement of opinion implying that defendants knew of no fact incompatible therewith (see generally 3 Rest.2d. Torts, § 539). The facts on which the creation or termination of an easement by implication depended were, after all, peculiarly within defendants' knowledge. (See *Sanfran Co.* v. *Rees Blow Pipe Mfg. Co.* (1959) 168 Cal.App.2d 191, 202-203 [335 P.2d 995].)

It is not our purpose to draw a roadmap for plaintiff at the trial, nor to suggest that plaintiff must inevitably prevail if it can prove the making of the disputed representations. We merely hold that after canvassing the entire record made by the parties in connection with the motion for summary judgment, there appear to be triable issues with respect to the fraud causes of action to which the statute of frauds is not a bar.

Reversed.

Stephens, J., and Ashby, J., concurred.

---

[8]At the trial defendants would, of course, not be precluded from attempting to prove that plaintiff did, after all, acquire some sort of right of way against ARCO.