[Civ. No. 29347. Fourth Dist., Div. Two. June 4, 1984.]

ANTHONY MUNOZ, Plaintiff and Appellant, v.
KAISER STEEL CORPORATION, Defendant and Respondent.

COUNSEL

Robert L. Hewitt for Plaintiff and Appellant.

David B. Reeves for Defendant and Respondent.

OPINION

**KAUFMAN, Acting P. J.**—Anthony Munoz (plaintiff) filed an amended complaint against Kaiser Steel Corporation (Kaiser or defendant) alleging one cause of action for breach of an oral employment contract for a minimum of three years and another cause of action for fraud and deceit based on the oral promise of three years' employment without intention to perform. Defendant's motion for summary judgment was granted as to the cause of action for breach of contract on the basis of the statute of frauds. A second motion for summary judgment on the fraud count was denied. However, a nonsuit was entered on the fraud count following plaintiff's opening statement.

■ ■■■ Plaintiff appeals contending that the trial court erred in granting defendant's motions for summary judgment and nonsuit.[1]

### Facts

The motion for summary judgment on the first cause of action was submitted on materials filed by defendant, primarily the transcript of plaintiff's deposition, a copy of plaintiff's employment application and a copy of a letter dated November 26, 1980, written by plaintiff to the president of Kaiser Steel Corporation after he was discharged. The motion for nonsuit was submitted on plaintiff's opening statement together with certain evidentiary exhibits whose admission into evidence had been stipulated to by the parties even before plaintiff commenced his opening statement. These exhibits included, inter alia, a copy of plaintiff's letter of November 26, 1980, a copy of a letter dated November 9, 1979, to plaintiff from W. H. Steritz, the superintendent of the coke plant at Kaiser Steel Corporation who had hired plaintiff, and a copy of an agreement referred to as a "patent agreement" signed by plaintiff at or about the time he was employed by Kaiser. In addition, both parties and the court appear to have treated the testimony of plaintiff in his deposition as being in evidence for purposes of the nonsuit motion. Thus, the facts to be considered in our review of the summary judgment and the nonsuit are the same except that so far as the record indicates Mr. Steritz's letter to plaintiff dated November 9, 1979, and the "patent agreement" were not before the court on the motion for summary judgment. While we shall consider and discuss the facts shown by the last-mentioned documents only in connection with our review of the nonsuit, we find nothing in either document of such overriding significance as to affect the disposition of the appeal as to either of the court's rulings. With this background, we proceed to recite the facts.

In March 1979 plaintiff was living in the State of Texas with his wife and two children. In a period of about six months plaintiff had been laid off from two separate jobs, the last of which he had held for about five months. Plaintiff had decided to seek more stable employment in the Southern California area. He had been born in California and raised in Redlands and his parents and a brother were living in that area.

Plaintiff came to Southern California and sought job interviews. On March 14, 1979, unsolicited, he dropped into the personnel department at

---

[1]What purported to be a separate judgment of dismissal was signed and filed after the motion for summary judgment on count one was granted. However, this was not legally a final appealable judgment; the proper procedure was to enter only a minute order pending final judgment in the action. (See Code Civ. Proc., § 437c; *Trani* v. *R. G. Hohman Enterprises, Inc.* (1975) 52 Cal.App.3d 314, 315-316 [125 Cal.Rptr. 34].)

Kaiser Steel Corporation in Fontana, explained his qualifications and asked whether a job might be available. He was informed by the personnel department that there was. He was given an interview with Mr. Steritz, the coke plant superintendent, following which he was tentatively hired as a labor foreman at a salary of $1,800 per month pending management confirmation. Although Mr. Steritz made no specific statement concerning the duration of employment and did not tell plaintiff his employment would last three years or any other specific time, Mr. Steritz stated to plaintiff that he "would be trained for at least three years." Assertedly, plaintiff understood this statement to mean that he was assured employment with defendant for a minimum of three years.

Plaintiff returned to Texas and on or about May 1, 1979, was informed by telephone that his employment was confirmed. He commenced work for Kaiser on May 7, 1979. Then, in the words of counsel: "At that point my client does two things: He decides to permanently move to California and he sells his home. He sold his home in Dallas, Texas. He comes to Highland, California, and purchases a new home." Plaintiff's Texas home had been purchased for approximately $27,500 and was sold for approximately $57,000. The purchase price of the house in Highland, California, was approximately $60,000, and the down payment of approximately $5,000 came from the proceeds of sale of the house in Texas. Plaintiff's monthly mortgage payments in Texas had been approximately $267; his monthly mortgage payments on the Highland house were approximately $607 exclusive of taxes and insurance. Counsel's opening statement indicated that some months after his discharge from employment at Kaiser, plaintiff was unable to pay the mortgage payments on the Highland house and "lost it."

Plaintiff received approximately three weeks of on the job training in the position as labor foreman. Although plaintiff was apparently not informed of it, his supervisor expressed some dissatisfaction with his performance and he was soon transferred to another job known as "top foreman." Plaintiff continued in that job until he was discharged on or about October 31, 1979. On November 9, 1979, Mr. Steritz wrote a letter to plaintiff explaining the reason for his termination and providing him a reference for use in seeking other employment. The letter read in part: "As I told you when you left, Tony, you were not being let go because of any particular fault on your part. Kaiser Steel is and will be in a period of contraction, which includes the lay off of many experienced supervisors from the discontinued facilities. In order to learn the Coke Plant operation starting from ground zero as you did, it takes a minimum of two to three years before you can compete with experienced personnel. I realized this when I hired you, and had things been otherwise we would have given you time to mature in your experience."

After being terminated at Kaiser, plaintiff diligently sought other employment. Although he obtained some part-time, temporary work at odd jobs, he was not successful in securing full-time employment until about June 1981 when he went to work as a state police officer at Chico State University. He commenced this action March 10, 1980.

### The Summary Judgment

As previously indicated, the summary judgment motion as to count one was submitted on the moving papers of defendant, and points and authorities in opposition filed by plaintiff which asserted primarily a triable issue of fact as to whether defendant was estopped from asserting the statute of frauds. Plaintiff's deposition was before the court, but no declaration in opposition to the motion was filed on the part of plaintiff.

If plaintiff's alleged cause of action for breach of contract is barred by the statute of frauds, the summary judgment was properly granted; otherwise not. We conclude it was.

Civil Code section 1624 provides in pertinent part: "The following contracts are invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged or by his agent: [¶] 1. An agreement that by its terms is not to be performed within a year from the making thereof; . . ."

Plaintiff alleged and asserted both in his deposition and in counsel's opening statement an oral employment contract for a minimum of three years. Thus, by its terms, the employment contract claimed by plaintiff was not to be performed within a year from its making and comes within the purview of section 1624, subdivision 1, of the Civil Code. (See *Ruinello* v. *Murray* (1951) 36 Cal.2d 687, 688-689 [227 P.2d 251]; *Tomlins* v. *American Ins. Co.* (1968) 258 Cal.App.2d 525, 527 [66 Cal.Rptr. 92]; *Gressley* v. *Williams* (1961) 193 Cal.App.2d 636, 640 [14 Cal.Rptr. 496].)

The only remaining question in review of the summary judgment is whether or not there existed a triable issue of fact as to defendant's being estopped to assert the statute of frauds. While in most instances the existence of an estoppel is a question of fact, summary judgment is appropriate if no estoppel could exist as a matter of law. (*State of California* v. *Haslett Co.* (1975) 45 Cal.App.3d 252, 256 [119 Cal.Rptr. 78].)

The law governing the existence of an estoppel to assert the statute of frauds is succinctly and accurately summarized in *Ruinello* v. *Murray, supra,* 36 Cal.2d 687, 689: "Plaintiff contends that he has alleged sufficient

facts to estop defendant from relying on the statute of frauds. There can be no estoppel unless plaintiff will suffer unconscionable injury or defendant will be unjustly enriched if the oral contract is not enforced. (*Monarco* v. *Lo Greco,* [1950] 35 Cal.2d 621, 623-624 [220 P.2d 737] and cases there cited.) Plaintiff has not alleged facts that meet either of these conditions.

"To state a cause of action based on unconscionable injury it is not enough to allege that plaintiff gave up existing employment to work for defendant. (*Murdock* v. *Swanson* [1948] 85 Cal.App.2d 380, 385 [193 P.2d 81]; *Standing* v. *Morosco* [1919] 43 Cal.App. 244, 248 [184 P. 954].) He must set forth his rights under the contract given up and show that they *were so valuable that unconscionable injury would result from refusing to enforce the oral contract* with defendant. (See, e.g., *Seymour* v. *Oelrichs* [1909] 156 Cal. 782, 792 [106 P. 88, 134 Am.St.Rep. 154]; *Tuck* v. *Gudnason* [1936] 11 Cal.App.2d 626, 627-628 [54 P.2d 88], cf. *Wilk* v. *Vencill* [1947] 30 Cal.2d 104, 105-107 [180 P.2d 351].)" (*Ruinello, supra,* 36 Cal.2d at p. 689, italics added.) The touchstone under California law is unjust enrichment of the party to be estopped or unconscionable injury to the other party. (*Pac. etc. Dev. Corp.* v. *Western Pac. R.R. Co.* (1956) 47 Cal.2d 62, 70 [301 P.2d 825]; *Ruinello* v. *Murray, supra,* 36 Cal.2d 687, 689; *Monarco* v. *Lo Greco, supra,* 35 Cal.2d 621, 623-624; *Tomlins* v. *American Ins. Co., supra,* 258 Cal.App.2d 525, 528.)

Here, as a matter of law, there is neither. Plaintiff was employed by defendant from May 7 until October 31, 1979, and received a salary of $1,700 a month for his services during that time. No contention is made that plaintiff was not reasonably and adequately compensated during the time he was employed by defendant. "No unjust enrichment results when the promisee has received the reasonable value of his services." (*Ruinello* v. *Murray, supra,* 36 Cal.2d 687, 690.)

Nor would the evidence support an estoppel. Contrary to an allegation in plaintiff's pleadings, he did not relinquish existing employment to accept the job with Kaiser. He was unemployed at the time, having lost two jobs within a period of about six months in Texas. Plaintiff had grown up in the Redlands area, his parents and brother were living in that area and he sought employment only in Southern California because "I wanted to come back to where I was born and raised."

When plaintiff came to California in March 1979 to seek employment he applied also to Santa Fe Railroad, but was never offered a position there. He did have a job interview with Santa Fe but that did not occur until two months after he began working for Kaiser.

Plaintiff estimated his expenses in moving from Texas to California at about $2,000. He sold his house in Texas for approximately $57,000 and purchased a comparable house in Highland for approximately $60,000. The mortgage payment on the Highland home exclusive of taxes and insurance was approximately $607 a month whereas the mortgage payment on the Texas home had been approximately $267 a month. However, plaintiff realized a substantial profit and apparently a substantial cash sum from the sale of the Texas house.

Summarized, plaintiff moved from Texas where he was unemployed to the San Bernardino area, where he was raised and wanted to return and where his close relatives lived, in order to accept employment with defendant. In doing so, he sold his house in Texas and bought a comparable house in Highland at approximately the price for which the Texas house was sold.

In California, and an overwhelming majority of jurisdictions, the foregoing facts are insufficient to establish unconscionable injury. (*Standing* v. *Morosco, supra,* 43 Cal.App.244, 246-248; *Offeman* v. *Robertson-Cole Studios, Inc.* (1926) 80 Cal.App. 1, 15 [251 P.830]; see also *Marston* v. *Downing Co.* (5th Cir. 1934) 73 F.2d 94; *Easter* v. *Kass-Berger, Inc.* (Mun. Ct. D.C. 1956) 121 A.2d 868; *Kooba* v. *Jacobitti* (1960) 59 N.J. Super. 496 [158 A.2d 194]; *Sinclair* v. *Sullivan Chevrolet Company* (1964) 45 Ill.App.2d 10 [195 N.E.2d 250], affd. 31 Ill.2d 507 [202 N.E.2d 516]; *Tanenbaum* v. *Biscayne Osteopathic Hospital, Inc.* (Fla. 1965) 173 So.2d 492; *Bentley* v. *Smith* (1907) 3 Ga.App.242 [59 S.E. 720]; *B. F. C. Morris Co.* v. *Mason* (1935) 171 Okla. 592 [43 P.2d 401]; Annot., Action by Employee in Reliance on Employment Contract Which Violates Statute of Frauds As Rendering Contract Enforceable (1974) 54 A.L.R.3d 715, 725-726, 733, 734, and cases there cited and discussed.)

Plaintiff's reliance on *Seymour* v. *Oelrichs, supra,* 156 Cal. 782 is entirely misplaced. In that case the plaintiff had given up a secure job as captain of detectives in the Police Department of the City and County of San Francisco to accept a position with the defendant in reliance on defendant's *promise to reduce the oral agreement to writing.* (At pp. 785-786, 795-800.)

Plaintiff's reliance on *Alaska Airlines* v. *Stephenson* (9th Cir. 1954) 217 F.2d 295, 298, is unwarranted for essentially the same reason. In that case the court decided to apply Alaskan law, but finding none on point, it adopted section 90 of the Restatement of Contracts dealing with promissory estoppel. The court noted that promissory estoppel is principally utilized as a substitute for consideration but that the same principle could apply to eliminate the necessity of a writing under the statute of frauds if the additional

factor of a promise to reduce the contract to writing were present. Finding that factor present and also finding the plaintiff had given up his right to another job in reliance on the oral agreement, it was held that the statute of frauds would not bar recovery. Here, there is no claim or evidence that defendant ever promised to reduce the oral agreement to writing, nor is there any evidence that plaintiff gave up secure, existing employment to go to work for Kaiser. On the contrary, the evidence establishes plaintiff was unemployed and had been unable to maintain stable employment in Texas.

Plaintiff's reliance on *Collins* v. *Rocha* (1972) 7 Cal.3d 232 [497 P.2d 225] and *Bondi* v. *Jewels by Edwar Ltd.* (1968) 267 Cal.App.2d 672 [73 Cal.Rptr. 494] on the issue of estoppel is also unwarranted. *Collins* v. *Rocha* involved an allegation of fraudulent inducement of employment for one or two weeks. Thus, the oral contract by its terms was to be performed within one year and no statute of frauds issue was involved. ■ Similarly, *Bondi* involved an oral agreement with an alleged duration of "so long as plaintiff should satisfactorily perform." (*Bondi, supra,* at p. 674.) As the court in *Bondi* expressly recognized, such a contract is for an indefinite duration, may be performed within one year, and does not come within the statute of frauds as embodied in Civil Code section 1624, subdivision 1. (267 Cal.App.2d at pp. 676-677, and cases there cited.)

Neither is section 139 of the Restatement Second of Contracts of aid to plaintiff. It reads in part: "(1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise. . . ."

It could well be argued that, as a matter of law, Kaiser could not reasonably have expected Mr. Steritz's statement that plaintiff "would be trained for at least three years" to be relied on by plaintiff as a promise of employment for a minimum term of three years. However, we do not deem it necessary to resolve that question. As we have indicated, the law is clear in California that to avoid the bar of the statute of frauds the plaintiff must demonstrate either unconscionable injury to himself or herself or unjust enrichment to the defendant. (*Ruinello* v. *Murray, supra,* 36 Cal.2d 687, 689, and cases there cited.) ■ While so far as we are informed no appellate case has discussed the applicability of section 139 of the Restatement Second of Contracts to California law, we interpret the prerequisite in section 139 that "injustice can be avoided only by enforcement of the promise" as meaning essentially the same thing substantively as the cited California authorities mean by their requirement of unjust enrichment to the defendant or unconscionable injury to the plaintiff.

*The Nonsuit*

Inverting what would normally be the logical sequence for discussing the issues, we first observe that our discussion and resolution of the issue of estoppel to assert the statute of frauds in the preceding section of the opinion is fully applicable here if the cause of action for fraud falls within the purview of the statute of frauds, and it would serve no useful purpose to repeat what we have said. As a matter of law, the evidence does not support an estoppel against defendant to assert the statute of frauds. The critical question here is whether the statute of frauds as set forth in Civil Code section 1624, subdivision 1, may serve to bar plaintiff's alleged cause of action for fraud.

Plaintiff's first contention in respect to this question is that even if plaintiff's alleged cause of action for fraud would otherwise be within the purview of the statute of frauds, it is not barred here because there is a sufficient written memorandum signed on behalf of defendant to satisfy the statute of frauds. ▇ This contention is apparently based on the so-called "patent agreement."[2] Most of the provisions of that agreement apparently pertain to ownership rights in processes or products discovered by the employee during employment at Kaiser. However, as read into the record by counsel for defendant at trial, paragraph number 1 of the agreement reads: "Employer employs and shall continue to employ employee at such compensation and *for such length of time as shall be mutually agreeable* to employer and employee." (Italics added.)

▇ It is true, of course, that to be sufficient to satisfy the statute of frauds a written memorandum need not include every term of the oral contract. (*Kerner* v. *Hughes Tool Co.* (1976) 56 Cal.App.3d 924, 934 [128 Cal.Rptr. 839].) However, when the aspect of the oral contract that brings it within the statute of frauds relates to its duration ("not to be performed within one year from its making"), both common sense and controlling authority indicate that to constitute a sufficient memorandum the writing must at least contain language indicating the duration promised was as claimed—here, a minimum of three years. As the court stated in *Standing* v. *Morosco, supra,* 43 Cal.App. at page 247, "The memorandum contains no words fixing the term of service. . . . And so the writing does not help the complaint except to show that the defendant agreed to execute 'the usual

---

[2]Actually, this contention by plaintiff purports to be made applicable also to the cause of action for breach of contract as to which summary judgment was granted. But the "patent agreement" was not before the court on the motion for summary judgment and cannot properly be considered by us in review of the summary judgment. (*Wiler* v. *Firestone Tire & Rubber Co.* (1979) 95 Cal.App.3d 621, 627 [157 Cal.Rptr. 248].)

theatrical contract.' This promise would be of no more potency when expressed in writing than by parol."

The same is true in the case at bench. Not only does the asserted memorandum fail to specify the duration as a minimum of three years, it expressly negates that asserted term. It provides the employment "shall continue . . . for such length of time as shall be mutually agreeable to employer and employee." It is thus entirely inadequate to satisfy the statutory requirement that a contract be in writing if it is not to be performed within one year. (Cf. *Friedman* v. *Bergin* (1943) 22 Cal.2d 535, 537-538 [140 P.2d 1]; *Standing* v. *Morosco, supra,* 43 Cal.App. at p. 247.)

The final question under this heading is whether the statute of frauds as embodied in Civil Code section 1624, subdivision 1, may serve to bar an action for promissory fraud when the promise allegedly made without intention to perform is one that is required by the statute of frauds to be in writing to be enforceable on a contractual basis. The Restatement Second of Torts in section 530 and, we are told, a number of sister jurisdictions take the position that an action for promissory fraud is not barred by the fact that the promise is required to be in writing to constitute an enforceable contractual obligation. (See *Cassidy* v. *Kraft-Phenix Cheese Corporation* (1938) 285 Mich. 426 [280 N.W. 814, 817-819].)

Section 530 of the Restatement Second of Torts reads in part: "(1) A representation of the maker's own intention to do or not to do a particular thing is fraudulent if he does not have that intention." Comment *c.* is entitled "*Misrepresentation of intention to perform an agreement.*" It reads in relevant part: "The rule stated in this Section finds common application when the maker misrepresents his intention to perform an agreement made with the recipient. . . . Since a promise necessarily carries with it the implied assertion of an intention to perform it follows that a promise made without such an intention is fraudulent and actionable in deceit under the rule stated in § 525. *This is true whether or not the promise is enforceable as a contract.* If it is enforceable, the person misled by the representation has a cause of action in tort as an alternative at least, and perhaps in some instances in addition to his cause of action on the contract. If the agreement is not enforceable as a contract, as when it is without consideration, the recipient still has, as his only remedy, the action in deceit under the rule stated in § 525. The same is true when the agreement is oral and made unenforceable by the statute of frauds, or when it is unprovable and so unenforceable under the parol evidence rule. . . . In all of these cases, it is immaterial to the tort liability that the damages recoverable are identical with, or substantially the same as, those which could have been recovered in an action of contract if the promise were enforceable." (Italics added.)

The rule adopted by the authors of the Restatement Second was espoused in dicta in a footnote by Justice Kaus, then Presiding Justice of Division Five of District Two of the Court of Appeal, in *Southern Cal. etc. Assemblies of God* v. *Shepherd of Hills etc. Church* (1978) 77 Cal.App.3d 951, 958, footnote 3 [144 Cal.Rptr. 46].[3] However, the rule in California appears to be settled to the contrary, with the caveat that the California Supreme Court has not had occasion to decide the question.  ■  Under a line of decisions of the California Court of Appeal dating back to at least 1941, an action for promissory fraud cannot be based upon an oral agreement that is invalid under the statute of frauds. (*Kroger* v. *Baur, supra,* 46 Cal.App.2d 801, 803-804; *Beach* v. *Arblaster* (1961) 194 Cal.App.2d 145, 153 [14 Cal.Rptr. 854]; *Keely* v. *Price* (1972) 27 Cal.App.3d 209, 215 [103 Cal.Rptr. 531]; *Owens* v. *Foundation for Ocean Research* (1980) 107 Cal.App.3d 179, 184 [165 Cal.Rptr. 571]; see also *Caplan* v. *Roberts* (9th Cir. 1974) 506 F.2d 1039, 1041-1042; *Levi* v. *Murrell* (9th Cir. 1933) 63 F.2d 670, 672.)

In *Kroger,* the seminal decision, the court reasoned: "An agreement authorizing or employing an agent or broker to purchase or sell real estate for compensation or a commission is invalid unless the same, or some note or memorandum thereof, is in writing, and subscribed by the party to be charged or by his agent. (Civ. Code, sec. 1624; Code Civ. Proc., sec. 1973.)°Appellant contends that his action is not upon the invalid agreement, but is an action for damages for fraud, upon the theory that the oral promise to pay him a commission was made without any intention of performing it and for the purpose of inducing him to waive a written memorandum. If the law can be thus nullified by the transparent device of predicating a tort

---

[3]Footnote 3 of that opinion reads: "Several considerations point to a demise of the *Kroger* rule [*Kroger* v. *Baur* (1941) 46 Cal.App.2d 801, 803 [117 P.2d 50], see discussion *infra*], should it ever reach the Supreme Court. In brief: 1. The 'better' rule is contra. Comment (c) to section 530 of the Restatement Second of the Law of Torts states that a misrepresentation of one's intention is actionable even 'when the agreement is oral and made unenforceable by the statute of frauds, or when it is unprovable and so unenforceable under the parol evidence rule.' 2. The broad statement of the *Kroger* rule is difficult to reconcile with the principle that a party may be estopped to assert the statute of frauds where such estoppel is necessary 'to prevent fraud that would result from refusal to enforce oral contracts in certain circumstances.' (*Monarco* v. *Lo Greco* (1950) 35 Cal.2d 621, 623 [220 P.2d 737]. 3. It is simply untrue that a plaintiff who undertakes to plead and prove actionable fraud is attempting to get around the statute of frauds by a 'transparent device.' *Kroger* seems to assume the inability of a jury to distinguish between an unkept but honest promise and one which the promisor never intended to perform. The law is otherwise. (*People* v. *Ashley* (1954) 42 Cal.2d 246, 263-264 [267 P.2d 271].) 4. The provision of the statute of frauds which spawned *Kroger* was Civil Code section 1624, subdivision 5, relating to agreements for real estate brokers' commissions. The law has traditionally had little sympathy with the broker who has failed to sign up his client. (E.g., *Augustine* v. *Trucco* (1954) 124 Cal.App.2d 229, 237-238 [268 P.2d 780].)"

action upon the invalid oral promise on the ground that the promisor did not intend to perform it, then the section might just as well be stricken from the statute. To license such a circuitous procedure to evade the provisions of such legislation would be to nullify and destroy its wholesome effect and the protection it affords against fraud. Assuming, as we must, that the allegations of the complaint are true, nevertheless the hardship thus falling upon the plaintiff must be borne by him, as this situation is precisely that which the statute of frauds was designed to prevent." (46 Cal.App.2d at p. 803.)

In the dicta in footnote 3 of *Southern Cal. etc. Assemblies of God* v. *Shepherd of Hills etc. Church, supra,* 77 Cal.App.3d at page 958, it is suggested that the *Kroger* rule is limited to actions by real estate licensees on unenforceable oral agreements to pay a commission. (See fn. 3, *ante.*) However, the decisions applying the rule have not invariably involved real estate licensees. In the *Beach* case the court denied, for the reasons expressed in *Kroger,* an action for fraud based upon an alleged oral agreement to make a will. (194 Cal.App.2d at p. 163.) Although we do agree with the court in *Assemblies of God* that it is not necessarily true that a plaintiff who undertakes to plead and prove actionable fraud is attempting to get around the statute of frauds by a " 'transparent device,' " permitting a fraud action will tend to subvert the purpose of the statute of frauds, and if the reasoning of *Kroger* is sound, we see no valid reason it is not equally applicable to a case such as this as to an oral agreement to pay a real estate commission.

We are told a large minority of jurisdictions follow the rule expressed in *Kroger.* The jurisdictions that reject the *Kroger* rule apparently do so in an attempt to avoid injustice. (See *Cassidy* v. *Kraft-Phenix Cheese Corporation, supra,* 280 N.W. 814, 817-819.) However, the avoidance of injustice is precisely the purpose and function of an estoppel to assert the statute of frauds, which, of course, is fully available to a litigant upon a proper showing in an action for promissory fraud otherwise barred by the statute of frauds as in an action for breach of contract based on the same oral promise. (See, e.g., *Keely* v. *Price, supra,* 27 Cal.App.3d 209, 214.)

Thus, the *Kroger* rule serves the purposes of the statute of frauds and at the same time does not necessarily produce unjust results. It appears to us that more mischief would be done than benefit would be gained by abandoning the rule and, especially in view of the longstanding and consistent adherence to the rule by numerous divisions of the several districts of the Court of Appeal, we decline to abandon the rule in the case at bench.[4]

---

[4]We note that the trial court was perfectly correct in concluding that it was required to apply the *Kroger* rule. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455-456 [20 Cal.Rptr. 321, 369 P.2d 937].)

We conclude that plaintiff's common law action for promissory fraud based on allegations of defendant's oral promise to employ plaintiff for a minimum of three years without intending to perform is precluded by *Kroger* v. *Baur* and its progeny.

### *Labor Code Sections 970 to 973*

Plaintiff finally contends the evidence before the court was sufficient to support a recovery for misrepresentation of employment opportunity under sections 970 to 973 of the Labor Code which do not require a writing.[5]

Defendant first urges that plaintiff's contention based on Labor Code sections 970-973 should not be considered on appeal because plaintiff made no attempt to plead a cause of action based on the statutory provisions but instead pled only a cause of action for common law fraud and deceit. Secondly, defendant urges that the cited statutory provisions were intended to cover farm labor employment and the solicitation of employment during labor disputes (see Lab. Code, § 973) and not the kind of case at bench. Finally, defendant contends that although Labor Code sections 970-972 do not require misrepresentations in writing, they were not intended to create a general exception to the statute of frauds as embodied in Civil Code section 1624, subdivision 1, observing that such an exception would virtually nullify that portion of the statute of frauds.

■ It is true that plaintiff did not attempt to state a cause of action based on the statutory provisions. However, we are unaware of any compelling authority requiring the statutory language to be pled or the statute specifically referred to in the pleadings to invoke statutory rights. The facts pled by plaintiff would appear to be sufficient to invoke the statute.

---

[5]Labor Code section 970 reads: "No person, or agent or officer thereof, directly or indirectly, shall influence, persuade, or engage any person to change from one place to another in this State or from any place outside to any place within the State, or from any place within the State to any place outside, for the purpose of working in any branch of labor, through or by means of knowingly false representations, whether spoken, written, or advertised in printed form, concerning either: [¶] (a) The kind, character, or existence of such work; [¶] (b) The length of time such work will last, or the compensation therefor; [¶] (c) The sanitary or housing conditions relating to or surrounding the work; [¶] (d) The existence or nonexistence of any strike, lockout, or other labor dispute affecting it and pending between the proposed employer and the persons then or last engaged in the performance of the labor for which the employee is sought."

Section 971 reads: "Any person, or agent or officer thereof, who violates Section 970 is guilty of a misdemeanor punishable by a fine of not less than fifty dollars ($50) nor more than one thousand dollars ($1,000) or imprisonment for not more than six months or both."

Section 972 provides: "In addition to such criminal penalty, any person, or agent or officer thereof who violates any provision of section 970 is liable to the party aggrieved, in a civil action, for double damages resulting from such misrepresentations. Such civil action may be brought by an aggrieved person or his assigns or successors in interest, without first establishing any criminal liability."

Moreover, even if the pleadings were said to be technically insufficient to invoke the statute, strictly speaking, the matter is not raised for the first time on appeal. In discussing its decision to grant defendant's motion for nonsuit, the court discussed Labor Code sections 970 and 972 and concluded they were not intended to create a general exception to the statute of frauds. At one point in the court's discussion, plaintiff's trial attorney indicated it was his intention to invoke Labor Code sections 970 and 972 and that in fact he had prepared some jury instructions on the basis of the statutory provisions that he intended to ask the court to give. Under these circumstances and in view of the summary disposition in the trial court we feel it appropriate to address on the merits the relationship of these Labor Code sections to the statute of frauds.

■ Although nothing in the legislative history of the statutes so indicating has been called to our attention, we suspect defendant is correct in asserting that their enactment had its genesis in problems relating to the solicitation of agricultural employees or other seasonal or mass hiring situations. Nevertheless, nothing in the statute restricts application of the statutory language to any particular class or kind of employment, and, absent some compelling indicia of legislative intent to so restrict the statutory ambit, we find no justification for restricting application of the statutory provisions to farm labor or other mass hiring situations.

■ We do agree, however, that Labor Code sections 970-972 were not intended to create and should not be construed as creating a general exception to the statute of frauds as embodied in Civil Code section 1624, subdivision 1. First, because a representation is either "knowingly false" (see § 970, fn. 5, *ante*) or not at the time it is made, the one-year statute of limitations applicable to both sections 971 and 972 (see Code Civ. Proc., § 340, subd. (1); Pen. Code, § 801, subd. (a); cf. *Stone* v. *James* (1956) 142 Cal.App.2d 738, 739-740 [299 P.2d 305]) suggests the remedies provided in these sections were not intended to apply to representations as to the duration of employment not susceptible to performance within one year.

Second, the requirement that a contract not to be performed within one year be in writing has been a part of the California statute of frauds since 1872 and the Legislature was well aware of it when Labor Code sections 970-972 were enacted. If the Legislature had intended sections 970-972 to create a general exception to Civil Code section 1624, subdivision 1, in practical effect virtually nullifying that portion of the statute of frauds, we believe the Legislature would have expressly so indicated by specifically mentioning the statute of frauds in phraseology such as "Subdivision 1 of Civil Code section 1624 notwithstanding, etc, etc." In the absence of such specific language we apply the fundamental rule of statutory construction

requiring courts to "harmonize statutes, reconcile seeming inconsistencies in them, and construe them to give force and effect to all of their provisions." (*Hough* v. *McCarthy* (1960) 54 Cal.2d 273, 279 [5 Cal.Rptr. 668, 353 P.2d 276]; see also *Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 918 [80 Cal.Rptr. 89, 458 P.2d 33]; *Prunty* v. *Bank of America* (1974) 37 Cal.App.3d 430, 436 [112 Cal.Rptr. 370]; *In re Marriage of Pinto* (1972) 28 Cal.App.3d 86, 88 [104 Cal.Rptr. 371].)

No conflict need exist between the cited Labor Code sections and Civil Code section 1624, subdivision 1. All that is required is that that portion of Labor Code section 970 referring to oral representations be limited to those that can be performed within one year. Harmonizing the statutes to avoid irreconcilable conflict and give effect to all their provisions as fully as possible, we so hold.

Should any person seeking relief under Labor Code sections 970-972 be unable to produce a writing to satisfy the statute of frauds, he or she would not be precluded from proving an estoppel against the employer to assert the statute of frauds in accordance with the established law to which we have referred.

We thus conclude that neither the nonsuit nor the summary judgment is rendered erroneous by Labor Code sections 970-973.

There is nothing in either *Collins* v. *Rocha, supra,* 7 Cal.3d 232 or *Chavarria* v. *Superior Court* (1974) 40 Cal.App.3d 1073 [115 Cal.Rptr. 549], relied on by plaintiff, indicating that Labor Code sections 970-972 were intended to create an exception to the statute of frauds. The issue in *Collins* was whether the litigants could pursue their complaint as a class action, while *Chavarria* concerned a choice of law problem. More importantly, both *Collins* and *Chavarria* concerned oral employment offers that *could be* performed within one year. Thus, in those cases no statute of frauds problem existed and the problem presented here was not discussed.

### Conclusion and Disposition

As a matter of law, the oral employment contract asserted by plaintiff is unenforceable on account of the statute of frauds as embodied in subdivision 1 of Civil Code section 1624 either in a contract action or a promissory fraud action. With no triable issue of material fact existing and with a complete defense established by the statute of frauds, the summary judgment

and nonsuit were properly granted. The judgment is therefore affirmed as to both orders.

McDaniel, J., and Rickles, J., concurred.