Filed 7/22/14; (unmodified opn. filed 5/28/14 and pub. order filed 6/23/14 attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JAMES RUFINI,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br> CITIMORTGAGE, INC.,<br><br>     Defendant and Respondent. | A138480<br><br> (Sonoma County<br> Super. Ct. No. SCV-252119)<br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on May 28, 2014, is modified as follows:

At pages 7-8, replace the paragraph beginning with "CitiMortgage's assertion" with the following: CitiMortgage's assertion that Rufini was ineligible for a HAMP modification because he was not living in his home at the time is also unavailing on demurrer. The HAMP guideline cited by CitiMortgage, Directive 09-01, specifies only that the home must be the borrower's primary residence, as evidenced by tax returns, credit reports and other "reasonable evidence . . . such as utility bills in the borrower's name." Rufini's allegation that he was renting out his home at the time suggests he may have difficulty prevailing on a HAMP-related contract claim. But it does not establish as a matter of law that he will be unable to prove an actionable breach, and it is not our task at this juncture to determine whether he will ultimately be able to do so. (See *Chavez, supra*, 219 Cal.App.4th at p. 1057.)

There is no change in the judgment. Respondent's petition for rehearing is denied.

DATE: _____        _____

                                                McGuiness, P.J.

Filed 5/28/14; (unmodified version; pub. order 6/23/14 (see end of opn.))

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JAMES RUFINI,<br>　　　Plaintiff and Appellant,<br>v.<br>CITIMORTGAGE, INC.,<br>　　　Defendant and Respondent. | A138480<br><br>(Sonoma County<br>Super. Ct. No. SCV-252119) |

James Rufini challenges an order sustaining a demurrer, without leave to amend, to his complaint concerning a failed home loan modification and eventual foreclosure. He contends his complaint adequately alleges causes of action for wrongful foreclosure, breach of contract and of the covenant of good faith and fair dealing, breach of fiduciary duty, negligence, negligent misrepresentation, and unfair business practices. We affirm the trial court's order sustaining the demurrer to the causes of action for general negligence, breach of fiduciary duty, and an accounting, and reverse it as to the causes of action for breach of contract, negligent misrepresentation and unfair business practices. With the guidance of appellate decisions, issued after the trial court's ruling, which address similar claims, we conclude the court should have granted Rufini leave to amend. We reverse to allow Rufini to amend his complaint on remand if he can do so as generally described in this opinion.

1

# BACKGROUND

This appeal challenges a trial court order sustaining a demurrer so we draw the relevant facts from the complaint.[1] (*Adams v. Paul* (1995) 11 Cal.4th 583, 586; *Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, 1608-1609 (*Hamilton*).)

In July 2007 Rufini purchased his primary residence in Sonoma with a $600,000 loan toward the purchase price secured by a deed of trust. Rufini and his fiancée lived in the home until they separated and Rufini temporarily moved in with his son to allow his fiancée time to find a new place to live. He then sought a loan modification from CitiMortgage. In June 2009, CitiMortgage approved Rufini for a loan modification and told him he would receive a permanent modification in October after making timely trial payments of $2787.93 in July, August and September.

Rufini timely made the trial payments at the modified rate through December 2009. In January, 2010, CitiMortgage informed him that his permanent loan modification agreement would be ready in three days. Rufini was concerned about the reliability of that promise, and worried by stories of lenders arbitrarily cancelling trial loan modifications, so he decided against moving back into his house until he received the written agreement. Three months later, with still no written agreement in hand, he rented out his house to offset his expenses until he could return. In August, Rufini learned that Citibank was denying his loan modification, "ostensibly because the home was not owner-occupied." He attempted to continue his timely mortgage payments at the modified level, but CitiMortgage returned his checks.

Rufini received a notice of default and election to sell under the deed of trust in September 2010, followed in December by a notice of trustee's sale scheduled for January 3, 2011. He contacted CitiMortgage and obtained its agreement to delay the

---

[1]The operative pleading is the first amended complaint. We deny CitiMortgage's request for judicial notice of Rufini's deed of trust and other recorded and unrecorded documents because they are not necessary for resolution of the issues before us. (See *Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063.)

foreclosure sale for 30 days. CitiMortgage assigned Jonathan Semien to Rufini's account, but Rufini was unable to contact him on the phone for another three and a half weeks. When he finally reached Semien's secretary, he was told the foreclosure would probably not take place until March 1, 2011, and was asked to provide additional information about his income. On March 1 Semien requested further documentation, including proof of residency and financial statements, "to complete mod[ification] review." In the meantime, however, CitiMortgage "knowingly planned and schemed . . . to transfer plaintiff's loan to PennyMac and foreclose on plaintiff behind his back in violation of dual tracking," all while lulling Rufini into complacency by pretending to pursue the permanent loan modification. On February 25, without Rufini's knowledge, CitiMortgage transferred his loan to PennyMac.

In mid-March, Rufini received a new notice of trustee's sale for an April 1, 2011 sale, but Semien agreed to postpone it again while they continued to pursue a loan modification. On April 11 Rufini was informed his modification was "in final state of completion." Then, on May 4, 2011, his house was sold at auction. Rufini contacted Semien, who told him that "his loan had been sold, that [Semien] knew all along that plaintiff's loan was sold to PennyMac, and knew plaintiff's loan would be foreclosed upon. Semien said he knew this information all along. . . . It was clear Mr. Semien was lying to plaintiff and had plaintiff send in extra documents even though he knew they had no intention of modifying plaintiff's loan. It seems clear his intention was to deceive plaintiff so plaintiff would not take any action until the foreclosure occurred."

The complaint sought equitable relief and damages for an illegal trustee's sale, "breach of contract—promissory estoppel," breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, unfair business practices, negligence, negligent misrepresentation, and an accounting. The trial court found the complaint failed to state a viable cause of action and sustained CitiMortgage's demurrer without leave to amend. Rufini filed a timely appeal.

3

# DISCUSSION

## I. Standards of Review

We review an order sustaining a demurrer de novo to determine whether the complaint states facts sufficient to constitute a cause of action. (*Bower v. AT&T Mobility,* LLC (2011) 196 Cal.App.4th 1545, 1552; *Stanton Road Associates v. Pacific Employers Ins. Co.* (1995) 36 Cal.App.4th 333, 341 (*Stanton Road*).) We construe the complaint "liberally . . . with a view to substantial justice between the parties" (Code Civ. Proc., § 452) and treat it " ' "as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. . . .' " (*Stanton Road, supra,* 36 Cal.App.4th at p. 340; *Jager v. County of Alameda* (1992) 8 Cal.App.4th 294, 296–297.) When the court sustains a demurrer without leave to amend, " 'we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.' [Citations.]" (*Stanton Road, supra,* at p. 341.) Whether the plaintiff will ultimately be able to prove the complaint's allegations is not relevant. (*Chavez v. IndyMac Mortgage Services* (2013) 219 Cal.App.4th 1052, 1057 (*Chavez*).)

## II. Breach of Contract, Breach of Covenant and Wrongful Foreclosure

### A. Allegations

We address these causes of action jointly because they share the common premise that CitiMortgage wrongfully foreclosed in breach of a binding agreement to modify Rufini's mortgage despite his compliance with the trial modification.
The clear thrust of Rufini's complaint is that CitiMortgage agreed to modify Rufini's original loan after a trial modification period and then breached that agreement after he complied with its terms and relied on the agreement to his detriment. Rufini alleges he "was approved for a loan modification in June 2009. Plaintiff was told he would receive

4

his permanent modification in October, after making his trial payments of $2787.93 for July, August, and September, 2009, which were all timely made." Thereafter he made or tendered payments "pursuant to the written Loan Modification Agreement"[2] "[t]hroughout the events leading up to this action." The complaint further alleges that, in reliance on CitiMortgage's promise to modify his loan, Rufini did not pursue other ways to avoid foreclosure and spent "countless hours" on the telephone and preparing correspondence, documents, and financial and personal information in pursuit of the modification.

## B. Analysis

CitiMortgage argues the complaint cannot state a cause of action for breach of contract because it was Rufini, not CitiMortgage, who breached the terms of the original note and deed of trust. This argument is predicated on Rufini's default under the terms of the original loan by making and tendering to CitiMortgage the reduced payments required by the trial modification plan, even though CitiMortgage ultimately declined to modify the loan. This argument is easily rejected. Rufini is not making a claim that CitiMortgage breached under the original loan documents. Rather, Rufini's claim is that CitiMortgage breached its agreement to modify that loan.

CitiMortgage asserts that the lack of a written agreement to modify Rufini's loan is fatal to his complaint because a written agreement is required by the statute of frauds. The argument seems based on a misreading of the complaint. Liberally construed, the complaint alleges both that there *was* a written agreement and that Rufini detrimentally relied on CitiMortgage's representations. Specifically, it alleges Rufini reasonably relied on CitiMortgage's promise to modify his loan "[g]iven the language in the subject *written Loan Modification Agreement*," made and tendered multiple loan payments, refrained from pursuing alternative funding opportunities, and expended substantial time and effort providing CitiMortgage with information "pursuant to the *written Loan Modification Agreement*." (Italics added.) CitiMortgage proposes no reason to conclude these

---

[2]No written agreement was appended to the complaint or appears in the record.

allegations of a writing and forbearance would not satisfy the statute of frauds, and none is apparent. (See generally *Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 174 [forbearance sufficient to overcome statute of frauds].) Though the exact basis of Rufini's contract theory is less than clear, the cure is to allow him to amend his complaint to clearly specify the nature and terms of the agreement he alleges CitiMortgage breached. (See *Stanton Road, supra,* 36 Cal.App.4th at p. 341.)

For guidance on remand, we refer the parties to recent opinions, issued after the trial court's ruling in this case, addressing the obligations of lenders and borrowers who engage in attempts to modify home mortgages under the federal Home Affordable Modification Program (HAMP). (See *Bushell v. JPMorgan Chase Bank, N.A.* (2013) 220 Cal.App.4th 915, 922–923 (*Bushell*); *Chavez, supra,* 219 Cal.App.4th 1052; *West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780 (*West*); *Barroso v. Ocwen Loan Servicing, LLC* (2012) 208 Cal.App.4th 1001 (*Barroso*); *Corvello v. Wells Fargo Bank, N.A.* (9th Cir. 2013) 728 F.3d 878 (*Corvello*); *Wigod v. Wells Fargo Bank, N.A.* (7th Cir. 2012) 673 F.3d 547, 557 (*Wigod*); see also *Sutcliffe v. Wells Fargo Bank, N.A.* (N.D. Cal. 2012) 283 F.R.D. 533, 550.) Under HAMP, enacted to minimize home foreclosures following the massive financial upheaval in 2008 (*Bushell, supra,* at pp. 922–923; *Corvello, supra,* 728 F.3d at p. 880), qualifying homeowners may obtain permanent loan modifications that reduce their mortgage payments. Lenders receive various incentives from the government for each HAMP modification. (*Bushell, supra,* 220 Cal.App.4th at p. 923.) The participating lender initially determines whether a borrower satisfies certain threshold requirements regarding the amount of the loan balance, monthly payment, and owner occupancy. (*Ibid.*) It then implements the HAMP modification process in two stages. (*Id.* at p. 924.) In the first stage, it provides the borrower with a "Trial Period Plan" (TPP), setting forth the trial payment terms, instructs the borrower to sign and return the TPP and other documents, and requests the first trial payment. (*Ibid.*) In the second stage, if the borrower has made all required trial payments and complied with all of the TPP's other terms, and if the borrower's representations on which the modification is based remain correct, the lender *must* offer

the borrower a permanent loan modification. (*Id.* at pp. 924–925; *West, supra,* 214 Cal.App.4th at pp. 786, 788; *Wigod, supra,* 673 F.3d at p. 557.) Under the above authority, if the lender does not do so, the borrower may sue the lender for breach of the trial modification plan and related causes of action.

CitiMortgage urges that *West* and, presumably, the other cases cited above are inapplicable here because Rufini "failed to allege his eligibility to participate in a HAMP TPP or modification, let alone compliance with the process . . . ." Possibly, but whether or not Rufini can so allege upon remand remains to be seen. Although the complaint does not plainly identify the attempted modification as pursuant to a TPP, it suggests as much in alleging that CitiMortgage refused "to qualify [Rufini] under HAMP."[3] Moreover, Rufini claims in his reply brief that the modification was, in fact, pursuant to a written TPP, and seeks leave to amend his complaint to that effect. Based on the allegations of his complaint and the recent decisions addressing such modifications, we agree that he must be given the opportunity to do so.

CitiMortgage's assertion that Rufini was ineligible for a HAMP modification because he was not living in his home at the time is also unpersuasive. The HAMP guideline it cites, Directive 09-01, requires only that the home must be the borrower's primary residence, as evidenced by tax returns, credit reports and other "reasonable evidence . . . such as utility bills in the borrower's name." Contrary to CitiMortgage's claim, Rufini's

---

[3]Rufini has filed a motion to augment the record to include a July 6, 2009 letter from CitiMortgage that appears to be an offer to enter a TPP. He asserts the document was lodged with the trial court but CitiMortgage says it was not, and Rufini has not supplied this court with a copy stamped by the trial court or otherwise established that it was lodged and before the trial court when it ruled on the demurrer. Moreover, Rufini did not seek to augment the record with this document until after CitiMortgage filed its respondent's brief on appeal. For these reasons, the motion to augment is denied. (See Cal. Rules of Court, rule 8.155, subd. (a); *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 894, fn. 10 [points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before].)

allegation that he was temporarily renting out his home does not bar him from showing it was nonetheless his primary residence.

*Nungaray v. Litton Loan Servicing, LP* (2011) 200 Cal.App.4th 1499, which CitiMortgage cites for the proposition that a borrower's compliance with a TPP does not give rise to a contract to permanently modify the original loan, does not persuade us otherwise. *Nungaray* is distinguishable, for one, in that the court there found on summary judgment that the plaintiffs had failed to comply with the conditions of their TPP. (*Id.* at pp. 1504–1505.) There has been no such finding here. More fundamentally, *Nungaray*'s analysis is at odds with the more recent and more persuasive cases cited above concluding, at least at the pleading stage, that compliance with a TPP can give rise to an enforceable agreement to permanently modify a loan.

CitiMortgage further asserts Rufini cannot maintain a breach of contract or, indeed, *any* cause of action arising from the allegedly wrongful foreclosure, because he failed to allege he was willing and able to tender the full amount of the loan. Here too, we disagree. CitiMortgage relies on the general rule that a plaintiff may not challenge the propriety of a foreclosure on his or her property without offering to repay the full amount borrowed against it. (See *Karlsen v. American Sav. & Loan Assn.* (1971) 15 Cal.App.3d 112, 117 [judgment on the pleadings proper where plaintiff attempted to set aside trustee's sale for lack of adequate notice, because "[a] valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust"]; *United States Cold Storage v. Great Western Savings & Loan Assn.* (1985) 165 Cal.App.3d 1214, 1222–1223 ["the law is long-established that a trustor or his successor must tender the obligation in full as a prerequisite to challenge of the foreclosure sale"].)

But Rufini has clarified that he is not seeking to undo the foreclosure sale. Construed liberally, the complaint appears to be about whether CitiMortgage had a right to foreclose under the original loan agreement after it offered Rufini a modification agreement and he accepted by "perform[ing] all conditions, covenants and promises required on his part to be performed" thereunder. So construed, since Rufini did not default under the terms of the modified agreement, he was not required to tender his

8

indebtedness to avoid foreclosure. (*Barroso, supra,* 208 Cal.App.4th 1001, 1017; *Chavez, supra,* 219 Cal.App.4th at pp. 1062–1063; see *also Bank of America, N.A. v. La Jolla Group II* (2005) 129 Cal.App.4th 706, 712 ["If, after a default, the trustor and beneficiary enter into an agreement to cure the default and reinstate the loan, no contractual basis remains for exercising the power of sale"].)

If Rufini is able to allege facts showing, under the above authorities, that CitiMortgage was contractually obligated to modify his loan, he must also be granted leave to allege a cause of action for breach of the implied covenant of good faith and fair dealing based on its refusal to do so. (*Barroso, supra,* 208 Cal.App.4th at p. 1014–1015.) " 'It has long been recognized, of course, that every contract imposes upon each party a duty of good faith and fair dealing in the performance of the contract such that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.' " (*Id.* at p. 1014; *Bushell, supra,* 220 Cal.App.4th at pp. 928–929.) We do not separately address the sufficiency of his cause of action for wrongful foreclosure because its legal viability appears to depend on whether Rufini can allege on remand that CitiMortgage foreclosed despite an enforceable agreement to permanently modify his loan. (See *Barroso*, *supra*, 208 Cal.App.4th at pp. 1016–1017.)

### III.  Negligent Misrepresentation

Rufini contends the court erred when it sustained the demurrer to his cause of action for negligent misrepresentation. This contention, too, has merit. The elements of negligent misrepresentation are (1) the defendant made a false representation; (2) without reasonable grounds for believing it to be true; (3) with the intent to deceive the plaintiff; (4) justifiable reliance on the representation; and (5) resulting harm. (*West, supra,* 214 Cal.App.4th 780, 792.) Here, Rufini alleged CitiMortgage falsely told him he was approved for a permanent loan modification on July 31, 2009 and thereafter carried on the pretense of engaging in efforts to finalize it, while all the while planning to foreclose on his loan; that CitiMortgage made this misrepresentation with the intent of inducing him to rely on it; and that in reasonable

9

reliance on it he spent hundreds of hours in loan modification negotiations and lost the opportunity to pursue other ways to avoid foreclosure. These allegations are sufficient, for purposes of demurrer, to state a claim for negligent misrepresentation. (*See*, e.g., *West, supra,* 214 Cal.App.4th at pp. 793–795; *Bushell*, *supra*, 220 Cal.App.4th at pp. 915, 930–931.)

CitiMortgage asserts the trial court ruled correctly because, as we understand the essence of its argument, banks owe their borrowers no duty not to misrepresent the truth "in the context of the loan modification allegations/discussions." Their authorities for this proposition do not support it. *Ragland v. U.S. Bank Nat. Assn.* (2012) 209 Cal.App.4th 182 held that the plaintiff could not prove the existence of a special relationship with the bank giving rise to the duty of care required for negligent infliction of emotional distress, but *reversed* a grant of summary judgment on the plaintiff's claim for negligent misrepresentation. (*Id*. at pp. 196–199, 205–206.) In *Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168, 182, also a summary judgment case, the plaintiffs had failed to allege two of the three misrepresentations they ascribed to the defendants, and failed to demonstrate any actionable reliance on the third. *Eddy v. Sharp* (1988) 199 Cal.App.3d 858 addresses the scope of an insurer's duty to inform its insureds of their rights and duties under an insurance policy, not whether lenders have a free pass to misrepresent important facts with impunity when they negotiate loan modifications. They do not. (See *Boschma v. Home Loan Center, Inc.* (2011) 198 Cal.App.4th 230, 250 [lender had a common law duty to avoid making partial, misleading representations of material facts]; *Wells Fargo Bank, N.A. v. FSI, Financial Solutions, Inc.* (2011) 196 Cal.App.4th 1559, 1572–1573.)

Citing an unpublished federal trial court opinion (*Newgent v. Wells Fargo Bank, N.A.* (S.D. Cal., Mar. 2, 2010, No. 09Cv1525 WQH) 2010 WL 761236), CitiMortgage next contends Rufini's negligent misrepresentation claim is barred by the statute of frauds because he failed to allege the existence of a written modification agreement. Assuming for purposes of this discussion that the statute of frauds bars a negligent misrepresentation claim based on an oral agreement to modify a contract required to be in

10

writing (see *Munoz v. Kaiser Steel Corp.* (1984) 156 Cal.App.3d 965, 977–978; but see *Southern Cal. etc. Assembles of God v. Shepherd of Hills etc. Church* (1978) 77 Cal.App.3d 951, 958 fn. 3), we have already stated that Rufini alleged both a written agreement and his forbearance from pursuing other sources of financing in reliance on CitiMortgage's representations. (See *Small v. Fritz Companies, Inc., supra,* 30 Cal.4th at p. 174; *Bushell, supra,* 220 Cal.App.4th at p. 930.) CitiMortgage's further assertion that Rufini's negligent misrepresentation claim is unsupported by a valid allegation of damages is equally meritless. Such forbearance, as well as the hundreds of hours Rufini alleges he spent in loan modification negotiations with CitiMortgage, are also sufficient allegations of damage to withstand the demurrer to this cause of action. (See *West, supra,* 214 Cal.App.4th at p. 795; *Bushell*, *supra*, 220 Cal.App.4th at p. 928.) Moreover, Rufini could possibly plead a loss of equity in the property as a result of the improper auction sale.

### IV. Business & Professions Code Section 17200

Business and Professions Code section 17200,[4] the unfair competition law, permits civil recovery for "any unlawful, unfair or fraudulent business act or practice. . . ." Rufini alleged that CitiMortgage committed an unlawful business practice when it denied his loan modification in bad faith "on the grounds that the home was not owner occupied when in fact it was owner occupied," and pretended to engage in loan modification efforts while actually intending to foreclose. CitiMortgage contends the court properly sustained the demurrer to this cause of action because Rufini failed to allege a "predicate act involving a violation of some other statute," which it asserts is a prerequisite to liability under section 17200. Not so. *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, which CitiMortgage cites for its view of the law, explains that, with limitations not relevant here, section 17200 imposes no such requirement. "The statutory language referring to 'any unlawful, unfair *or* fraudulent' practice (italics added) makes clear that a practice may be deemed unfair even if not

---

[4]Hereinafter section 17200.

11

specifically proscribed by some other law. 'Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition-acts or practices which are unlawful, or unfair, or fraudulent. "In other words, a practice is prohibited as 'unfair' or 'deceptive' *even if not 'unlawful'* and vice versa." ' " (*Id.* at p. 180, italics added; see also *Yanting Zhang v. Superior Court* (2013) 57 Cal.4th 367, 370.)

*West, supra*, 214 Cal.App.4th at pages 805–806, is instructive. The complaint there, liberally construed, alleged that the lender engaged in a practice of offering borrowers TPP's that did not comply with federal guidelines and directives; made misrepresentations about a borrower's right and ability to challenge bank calculations; made misrepresentations about pending foreclosure sales; and wrongfully had trustees' sales conducted when the borrower was in compliance with a TPP. (*Id.* at p. 806.) The court held these allegations sufficient to support a cause of action under the unfair competition law based on underlying, nonstatutory claims for fraud, negligent misrepresentation, breach of contract and promissory estoppel. (*Ibid.*) So, too, here.

CitiMortgage alternatively argues Rufini lacks standing to bring an unfair competition claim because he cannot allege he "lost money or property as a result of the unfair competition."[5] It seems CitiMortgage considers Rufini's only loss to be the mortgage payments he made while attempting to obtain a loan modification, and concludes those payments cannot support a claim for damages because Rufini was legally required to make them under the original note. Not so. The complaint also alleges that

---

[5]Business and Professions Code section 17204 provides that "[a]ctions for relief pursuant to this chapter shall be prosecuted exclusively in a court of competent jurisdiction by the Attorney General or a district attorney or by a county counsel authorized by agreement with the district attorney in actions involving violation of a county ordinance, or by a city attorney of a city having a population in excess of 750,000, or by a city attorney in a city and county or, with the consent of the district attorney, by a city prosecutor in a city having a full-time city prosecutor in the name of the people of the State of California upon their own complaint or upon the complaint of a board, officer, person, corporation, or association, *or by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition.*" (Italics added.)

12

CitiMortgage's unfair and deceptive practices deprived Rufini of the opportunity to pursue other means of avoiding foreclosure, leading to the loss of his home and the equity he had in it. He sufficiently alleged standing under section 17200. (See *Yanting Zhang v. Superior Court*, *supra*, 57 Cal.4th at p. 372; *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 320–321.)

Finally, relying upon *Mangini v. Aerojet-General Corp.* (1991) 230 Cal.App.3d 1125, 1155–1156, CitiMortgage asserts Rufini's section 17200 claim fails because the unfair competition law applies only to ongoing conduct. That was the state of the law when *Mangini* was decided, but the following year the Legislature amended section 17200 to state that it applies to any unlawful " '*act* or practice,' presumably permitting invocation of the UCA based on a single instance of unfair conduct." (*Podolsky v. First Healthcare Corp.* (1996) 50 Cal.App.4th 632, 653; *Klein v. Earth Elements, Inc.* (1997) 59 Cal.App.4th 965, 968, fn. 3.) We conclude the trial court erroneously sustained the demurrer to Rufini's cause of action brought under section 17200.

## V. Other Causes of Action

Rufini's causes of action for general negligence and breach of fiduciary duty fare less well. In support of the former, Rufini incorporates his prior allegations and further alleges that CitiMortgage violated its duty as the servicer of his loan when it "negligently and carelessly rejected plaintiffs tenders of the reimbursement amounts." With the addition of the assertion that CitiMortgage's actions were negligent, the allegations essentially elaborate on Rufini's breach of contract allegations and therefore do not support a separate cause of action in tort. "[C]ourts will generally enforce the breach of a contractual promise through contract law, except when the actions that constitute the breach violate a social policy that merits the imposition of tort remedies." (*Erlich v. Menezes* (1999) 21 Cal.4th 543, 552, 553–554; see also *Award Metals, Inc. v. Superior Court* (1991) 228 Cal.App.3d 1128, 1135 [demurrer properly sustained to duplicative negligence cause of action].)

As to breach of fiduciary duty, Rufini alleges that CitiMortgage owed him a fiduciary duty to, at a minimum, perform a fair analysis in good faith, investigate the material facts,

and use reasonable care and due diligence in compliance with the relevant standards of professional conduct. This cause of action falls directly afoul of the principle that "[n]o fiduciary duty exists between a borrower and lender in an arm's length transaction. [Citations.] '[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money.' " (*Ragland v. U.S. Bank Nat. Assn., supra,* 209 Cal.App.4th at p. 206; *Nymark v. Heart Fed. Savings & Loan Assn.* (1991) 231 Cal.App.3d 1089, 1096.) Rufini's factual allegations do not show that CitiMortgage's activities went beyond its conventional role as a mere lender of money and therefore do not establish the existence of a fiduciary duty.

The trial court also sustained CitiMortgage's demurrer to Rufini's cause of action for an accounting. Rufini has abandoned any claim of error regarding that cause of action by failing to assert it in his briefs on appeal, so we will not address it. (See *Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1177.)

## DISPOSITION

The judgment is affirmed as to the causes of action for general negligence, breach of fiduciary duty and an accounting. In all other respects, the judgment is reversed and the matter remanded for further proceedings. Rufini shall recover costs incurred on appeal.

_____
Siggins, J.

We concur:

_____
McGuiness, P.J.

_____
Jenkins, J.

14

Filed 6/23/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JAMES RUFINI,<br>　　　Plaintiff and Appellant,<br>v.<br>CITIMORTGAGE, INC.,<br>　　　Defendant and Respondent. | A138480<br><br>(Sonoma County<br>Super. Ct. No. SCV-252119)<br><br>**ORDER CERTIFYING OPINION<br>FOR PUBLICATION** |

**THE COURT:**

The opinion filed in the above-entitled matter on May 28, 2014, was not certified for publication in the Official Reports. For good cause, the request for publication by plaintiff and appellant is granted.

Pursuant to rule 8.1105(c) of the California Rules of Court, the opinion in the above-entitled matter is ordered certified for publication in the Official Reports.

DATE: _____

McGuiness, P.J.

15

Trial Court:                              Sonoma County Superior Court

Trial Judge:                             Honorable Elliot Daum

Counsel for Appellant:                   Richard Phillip Sax

                                         William P. Matz

Counsel for Respondent:                  Peter Joseph Salmon
                                         Christopher Lee Peterson
                                         PITE DUNCAN, LLP