Filed 8/11/22  Parabia v. Wells Fargo Bank CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| PERIN F. PARABIA, Plaintiff and Appellant, v. WELLS FARGO BANK, N.A., Defendant and Respondent. | D079320 (Super. Ct. No. 37-2017-00017759-CU-OR-CTL) |


APPEAL from a judgment of the Superior Court of San Diego County, Kenneth J. Medel, Judge.  Affirmed.

Darren J. Bogié, for Plaintiff and Appellant.

Lagerlof, Jeremy E. Shulman, and Michael Rapkine, for Defendant and Respondent.

Dr. Perin F. Parabia appeals from a judgment entered after the trial court sustained Wells Fargo Bank, N.A.'s (Wells Fargo) demurrer to Dr. Parabia's first amended complaint without leave to amend.  We find no error and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Because this appeal challenges a trial court order sustaining a demurrer, we draw the relevant facts from the operative first amended complaint and judicially noticeable matters.[1] (*Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, 1608–1609.)

From at least 2005 through 2015, Dr. Parabia had an extensive banking relationship with Wells Fargo and relied on Wells Fargo employees for personal and business banking and financial advice. In September 2005, Dr. Parabia and her brother Sam Parabia executed a promissory note with Wells Fargo, secured by a deed of trust, to pay off a prior loan related to the residential property located on Romero Drive in La Jolla, California (the Property), which was Dr. Parabia's primary residence.

Beginning in January 2014 and through December 2016, Dr. Parabia made several attempts to modify[2] her mortgage loan with Wells Fargo. Dr. Parabia first attempted to obtain a modified loan from Wells Fargo from February 2014 through November 2014. Dr. Parabia submitted all requested

[1] We consider the judicial notice documents Wells Fargo submitted without objection in the trial court, but we deny Wells Fargo's additional request on appeal for judicial notice of bankruptcy records relating to Dr. Parabia and her brother Sam Parabia. " 'Reviewing courts generally do not take judicial notice of evidence not presented to the trial court' absent exceptional circumstances." (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379, fn. 2.) We find no exceptional circumstances here. In any event, the documents are not necessary to resolve this appeal. (See *Save Lafayette Trees v. East Bay Regional Park Dist.* (2021) 66 Cal.App.5th 21, 29, fn. 2.)

[2] Dr. Parabia's first amended complaint appears to use the terms "renegotiate," "refinance," and "modify" interchangeably when referring to the loan agreement between the parties. On appeal, the parties do not seem to dispute that Dr. Parabia was seeking to modify the terms of her loan mortgage with Wells Fargo. Accordingly, that is the language we use here.

2

documentation to Wells Fargo by July 14, 2014. From July 2014 to November 2014, the Wells Fargo representatives who had requested the documentation, Mohammad T. and Courtney A., did not provide Dr. Parabia with an update regarding the status of her application for a loan modification. In September, October, and November 2014, Dr. Parabia attempted to contact Mohammad and Courtney regarding the status of her loan application but did not receive any response. On December 10, 2014, Mohammad informed Dr. Parabia during a telephone call that her application had been denied because she was not eligible for a loan modification. During this same call, Mohammad indicated that he would try again to obtain a loan modification for Dr. Parabia in January 2015.

Dr. Parabia and her brother also had a non-Wells Fargo loan on the Property, which was eventually assumed by non-party State Bank of Texas. In December 2014, the State Bank of Texas filed a complaint against Dr. Parabia and other defendants for judicial foreclosure of the Property in the United States District Court for the Southern District of California (the Foreclosure Action).

In January 2015, Dr. Parabia called Wells Fargo to inquire as to her loan modification application. Mohammad and Courtney informed Dr. Parabia via telephone again that she was not eligible to modify her loan with Wells Fargo but did not provide any reason.

In November 2015, Wells Fargo changed Dr. Parabia's loan from an interest-only loan to an interest and principal loan, increasing the amount of each payment from approximately $11,000 to $14,000 per month. Dr. Parabia paid principal and interest on this loan from approximately November 2015 to April 2016.

3

In March 2016, Dr. Parabia again attempted to modify her Wells Fargo loan. Dr. Parabia spoke with two Wells Fargo employees, including Melissa G., who told Dr. Parabia that the terms of her loan could be renegotiated and suggested that she request a loan modification once more. Melissa also instructed Dr. Parabia to stop making payments on her mortgage loan until the terms were reset. Dr. Parabia followed this instruction and stopped making her mortgage payments. This caused Dr. Parabia significant stress and anxiety. Dr. Parabia also alleges that, at some unspecified time, she offered to bring her loan current to cure any default, but her efforts were rejected by Wells Fargo.

In April 2016, Dr. Parabia called Melissa to discuss the loan application process. Melissa was unavailable, so Dr. Parabia was transferred to another Wells Fargo representative. The next month, the same Wells Fargo representative directed Dr. Parabia to work with another Wells Fargo employee, Jennifer W., on her loan modification. From May through July 2016, at least three different Wells Fargo employees told Dr. Parabia they were attempting to modify her loan and instructed her to submit and resubmit certain documents as part of the application process. Dr. Parabia submitted all requested documents, but Wells Fargo representatives claimed for the next three months that documents were missing. Dr. Parabia resubmitted the same documents several more times and received the same response from Wells Fargo that documents were missing.

On July 25, 2016, Jennifer informed Dr. Parabia that the loan modification application time period had expired, and she would have to restart the application process. From August through October 2016, Dr. Parabia again submitted documents to Wells Fargo, apparently as part of the loan modification application process. Dr. Parabia had previously asked

4

her accountant to send all requested documents to Wells Fargo on her behalf to ensure that delivery was documented, but Wells Fargo refused to accept documents from Dr. Parabia's accountant and instead indicated that Dr. Parabia must submit the documents herself. At some point during this period, Jennifer and other Wells Fargo representatives advised Dr. Parabia that she could qualify for a loan modification if she increased her income by renting out the Property as a vacation rental. Dr. Parabia expended funds to prepare and market the Property as a luxury vacation rental. In December 2016, Wells Fargo again denied Dr. Parabia's application for a loan modification. Wells Fargo's conduct throughout the loan modification process discouraged Dr. Parabia from pursuing options with other lenders.

Wells Fargo subsequently initiated non-judicial foreclosure proceedings and caused a notice of default to be recorded on January 19, 2017, and a notice of trustee's sale to be recorded on April 20, 2017.[3]

Dr. Parabia filed her complaint against Wells Fargo in this action on May 17, 2017, before any foreclosure had occurred.

On September 15, 2017, judgment was entered in the Foreclosure Action in favor of the State Bank of Texas and against Dr. Parabia. On November 19, 2018, a writ of execution was entered against Dr. Parabia. On January 17, 2020, a United States Marshal's Service Deed of Sale was recorded finalizing the judicial foreclosure proceeding initiated by the State Bank of Texas and foreclosure of the Property. It is undisputed that Wells Fargo never foreclosed on the Property.

---

[3] The first amended complaint refers to "the action of the purported Trustee Sale set forth on May 22, 2017" and a "May 22, 2017 foreclosure by Wells Fargo." The parties do not dispute, however, that it was the State Bank of Texas—not Wells Fargo—that ultimately foreclosed on the Property.

Wells Fargo subsequently filed a motion for judgment on the pleadings in this case, which the trial court granted with leave to amend. Dr. Parabia then filed the operative first amended complaint, alleging negligent misrepresentation, violations of Business & Professions Code sections 17200 and 17500, breach of the implied covenant of good faith and fair dealing, and intentional and negligent infliction of emotional distress (NIED) based on Wells Fargo's conduct throughout the loan modification process.[4]

Wells Fargo filed a demurrer to and motion to strike the first amended complaint, along with a request for judicial notice, arguing that Dr. Parabia could not show damages due to any actions taken by Wells Fargo, as it was the State Bank of Texas that had foreclosed on the Property. Wells Fargo also argued, as relevant here: (1) Dr. Parabia's implied covenant of good faith and fair dealing cause of action fails because she did not allege the existence of a contract providing her with the right to obtain a loan modification, and the implied covenant cannot impose duties not contracted for by the parties; and (2) her NIED claim fails because Wells Fargo owed no duty of care to Dr. Parabia and emotional distress damages are not available absent physical injury.

In opposition, Dr. Parabia contended that she sufficiently pled damages despite the fact that Wells Fargo did not foreclose on the Property because: (1) she spent time and incurred expenses during her attempts to renegotiate the loan with Wells Fargo; (2) she expended time and funds to prepare and market the Property as a luxury vacation rental; and (3) Wells Fargo induced her to stop paying her mortgage and forgo working with other lenders, which

---

[4] Dr. Parabia does not argue on appeal that her claims for intentional infliction of emotional distress or violations of Business & Professions Code sections 17200 and 17500 were improperly dismissed, so we do not address them.

materially contributed to her ultimate loss of the Property.  She further argued that lenders are subject to the covenant of good faith and fair dealing when a borrower attempts to negotiate a loan modification, and her NIED claim was properly pled because Wells Fargo owed her a duty of care based on their long-standing relationship, throughout which Dr. Parabia relied on Wells Fargo for personal and business banking advice.  Dr. Parabia requested leave to amend her complaint should the court grant Wells Fargo's demurrer.

In reply, Wells Fargo disputed Dr. Parabia's claim that she suffered damages sufficient to state a cause for negligent misrepresentation, arguing that:  time and effort spent applying for a loan modification is the sort of nominal damage that is not actionable; she failed to show how renting out the Property as a vacation rental constituted damages; her failure to qualify for a loan modification did not constitute an injury; and the trial court in ruling on the prior motion had already rejected as insufficient Dr. Parabia's allegation that Wells Fargo's alleged misrepresentations contributed to the foreclosure of the Property by the State Bank of Texas.  Wells Fargo also reiterated its arguments in support of its request to dismiss Dr. Parabia's claims for NIED and breach of the implied covenant of good faith and fair dealing.

The trial court heard oral arguments at an unreported hearing and subsequently sustained Wells Fargo's demurrer to the first amended complaint without leave to amend.  The court first noted that it had previously found that Dr. Parabia "had not stated a cognizable claim against Wells Fargo because Wells Fargo did not foreclose on the Property—State Bank of Texas did.  The loan upon which plaintiff is suing no longer exists." The court further concluded that Dr. Parabia had failed to allege any other actionable damages for the negligent misrepresentation claim.  Specifically, it found that Dr. Parabia's "failure to qualify for a loan modification," the time

7

and expense incurred in attempting to negotiate with Wells Fargo, and the time and funds incurred " 'to make and rent out the subject property as a luxury vacation rental,' " which was to "increase her income," did not constitute damages that could support a cause of action for negligent misrepresentation.

The trial court also rejected Dr. Parabia's remaining claims. First, it found that, "[b]ecause Plaintiff has not identified any contract that provides Plaintiff the right to obtain a loan modification, Wells Fargo could not have breached the implied covenant by failing to grant one to Plaintiff." The court reasoned that it made sense that the loan agreement did not provide Dr. Parabia the right to receive a loan modification, "as neither a lender nor a borrower enters into a mortgage loan under the premise that the borrower will ultimately default and need to modify the terms." Second, the court concluded that Dr. Parabia's negligent infliction of emotional distress claim failed because she did "not show that Wells Fargo owed her a duty of care or that plaintiff suffered injury as a result of conduct." The court denied leave to amend and entered judgment in favor of Wells Fargo.

Dr. Parabia appeals the order sustaining the demurrer without leave to amend as to her claims for NIED, negligent misrepresentation, and breach of the implied covenant of good faith and fair dealing.

DISCUSSION

I

We review a judgment of dismissal based on a sustained demurrer de novo to determine whether the complaint alleges facts sufficient to state a cause of action. (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.) We accept as true all properly pled material factual allegations of the complaint, together with facts that may be properly judicially noticed.

8

(*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  Where the trial court sustains a demurrer without leave to amend, we consider whether there is a reasonable possibility the plaintiff could cure the defect by an amendment and must reverse for abuse of discretion if that possibility exists.  (*Ibid*.)  The plaintiff bears the burden of proving that an amendment would cure the defect. (*Ibid*.)

## II

### *Negligent Infliction of Emotional Distress*

One of Dr. Parabia's three claims at issue in this appeal is for negligent infliction of emotional distress.  "There is no independent tort of negligent infliction of emotional distress; rather, '[t]he tort is negligence, a cause of action in which a duty to the plaintiff is an essential element.' " (*Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 205 (*Ragland*).)  Such a duty of care may be imposed by law, assumed by the defendant, or created by virtue of a special relationship.  (*Ibid*.)

We conclude that the first amended complaint does not state a claim for NIED based on Wells Fargo's failure to modify or consider modifying her mortgage loan or its related conduct.  Dr. Parabia correctly notes that "[t]he issue of whether a tort duty exists for mortgage modification has divided California courts for years."  But after Dr. Parabia filed her opening brief, the Supreme Court definitively resolved this issue and held that such a duty does not exist.  (*Sheen v. Wells Fargo Bank, N.A.* (2022) 12 Cal.5th 905, 915 (*Sheen*).)  More specifically, the court held that a lender does not owe its borrower a tort duty sounding in general negligence principles to modify or consider modifying the borrower's loan where the borrower suffers purely "economic losses—i.e., pecuniary losses unaccompanied by property damage or personal injury[.]"  (*Ibid*.)  Such a negligence claim arises from the

9

mortgage contract between a borrower and its lender and therefore "falls within the ambit of the economic loss doctrine." (*Ibid*.)

As explained in *Sheen*, the economic loss rule provides that there is no recovery in tort for negligently inflicted financial harm unaccompanied by physical or property damage. (*Sheen*, *supra*, 12 Cal.5th at p. 922.) This rule also bars claims that arise from, or are not independent of, an underlying contract between the parties. (*Id*. at p. 923.) A further refinement of the contractual economic loss rule in the lender-borrower context, articulated by the court in *Nymark v. Heart Fed. Savings & Loan Assn.* (1991) 231 Cal.App.3d 1089, 1096 and adopted in *Sheen*, provides that a " 'financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money.' " (*Sheen*, at p. 927 [citing *Nymark*, at p. 1096]; see also *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 67 (*Lueras*) ["[A] loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money."].)

This general rule forecloses Dr. Parabia's NIED claim. (*Sheen*, *supra*, 12 Cal.5th at pp. 927–928.) Dr. Parabia alleges that Wells Fargo caused her severe emotional distress by advising her to stop making her loan payments, rejecting her loan modification application, and initiating the foreclosure process based in part on her missed payments. Because "the handling of a loan modification is within the scope of Wells Fargo's role as a lender" (*Id*. at p. 928), Dr. Parabia has failed to allege that Wells Fargo owed her a negligence-based duty of care.

We recognize that there was no claim for emotional distress damages in *Sheen*. But still, the rationale of *Sheen* applies to Dr. Parabia's NIED claim.

10

The economic loss rule protects the contractual bargain made by the parties and " 'prevents the erosion of contract doctrines by the use of tort law to work around them.' " (*Sheen*, *supra*, 12 Cal.5th at p. 924.)  Except in highly unusual circumstances, emotional distress damages are not available for a breach of contract resulting in no physical injury.  (*Erlich v. Menezes* (1999) 21 Cal.4th 543, 554–558 (*Erlich*) [disallowing emotional distress damages for breach of contract to construct a house resulting in only economic injury and property damage].)  In the absence of a physical injury, therefore, allowing recovery of emotional distress damages on a tort theory for *negligence* in the performance of a contractual relationship "would blur the distinction between contract and tort, thereby violating the policy underlying the economic loss rule." (*Butler-Rupp v. Lourdeaux* (2005) 134 Cal.App.4th 1220, 1229 [reversing award of damages for negligent infliction of emotional distress resulting from defendants' negligent performance of contractual duties under lease].)

Accordingly, we conclude that Dr. Parabia has failed to allege the existence of any duty on the part of Wells Fargo to avoid *unintentionally* causing her emotional distress when performing its customary role in handling a loan modification application.  (See *Ragland, supra*, 209 Cal.App.4th at pp. 205–208 [holding borrower could not recover for NIED claim arising from lender's conduct in responding to loan modification request and foreclosing on property, because lender's conduct resulted in no physical injury and there was no relationship giving rise to an independent duty the breach of which would permit recovery of emotional distress damages based on negligence].)

We are not persuaded by Dr. Parabia's argument that her allegations of an extensive banking relationship with Wells Fargo, her reliance on its

11

bankers for banking and financial advice, and the instruction from a Wells Fargo employee to stop making her mortgage payments render Wells Fargo more than a mere lender of money. As pled in the complaint, the allegedly negligent conduct by Wells Fargo is directly related to, and not independent from, the underlying loan and loan modification process. Wells Fargo's involvement in this process, including whether it processed, reviewed, and responded carefully and completely to Dr. Parabia's loan modification applications, "is part and parcel of its assessment regarding how best to recoup the money it is owed." (*Sheen*, *supra*, 12 Cal.5th at p. 928.) This involvement, without more, does not expand Wells Fargo's role beyond that of a mere lender of money such that it owes a duty of care to Dr. Parabia. (See *ibid*.; *Ragland*, *supra*, 209 Cal.App.4th at p. 207 [lender's instruction to borrower not to make her loan payment was advice "directly related to the issue of loan modification" and thus fell within the scope of its conventional role as a lender of money].)

Nor can Dr. Parabia rely on the factors articulated in *Biakanja v. Irving* (1958) 49 Cal.2d 647, 650 to impose on Wells Fargo a duty to avoid negligently causing emotional distress to Dr. Parabia. The Supreme Court explained in *Sheen* that "the *Biakanja* factors are not applicable when, as here, the litigants are in contractual privity and the plaintiff's claim is not 'independent of the contract arising from principles of tort law.' " (*Sheen*, *supra*, 12 Cal.5th at p. 942 [citing *Erlich*, *supra*, 21 Cal.4th at p. 551].)

Dr. Parabia has therefore failed to state a claim for NIED.[5]

---

[5] Because we find that Dr. Parabia failed to state a claim for NIED, we need not consider whether the trial court correctly concluded that the claim was improperly added to the first amended complaint without leave to amend to add new claims.

12

III

*Negligent Misrepresentation*

Though the Supreme Court's opinion in *Sheen* requires dismissal of Dr. Parabia's NIED claim, the Supreme Court emphasized that it was not foreclosing the possibility of a properly pled claim for negligent misrepresentation in the mortgage modification context. (*Sheen*, *supra*, 12 Cal.5th at pp. 916, 943.) In this case, however, we conclude that Dr. Parabia's negligent misrepresentation claim fails for two reasons: (1) she has not alleged an actionable misrepresentation;[6] and (2) she has not alleged recoverable damages.

The elements of negligent misrepresentation are: (1) the misrepresentation of a past or existing material fact, (2) made without reasonable ground for believing it to be true, (3) with intent to induce another's reliance, (4) justifiable reliance by the plaintiff on the misrepresentation, and (5) resulting damage. (*Apollo Capital Fund, LLC v. Roth Capital Partners, LLC* (2007) 158 Cal.App.4th 226, 243.) Unlike fraud, negligent misrepresentation does not require knowledge of falsity. (*Ibid*.) Actionable misrepresentations must pertain to past or existing material facts. (*Tarmann v. State Farm Mut. Auto. Ins. Co.* (1991) 2 Cal.App.4th 153, 158 (*Tarmann*).) Statements or predictions regarding future events are deemed

---

6      Wells Fargo did not assert this as a basis for its demurrer in the trial court but did so on appeal. Although an issue not raised in the trial court is typically forfeited, we can reach a ground for demurrer not raised below if it presents a pure question of law and the parties have had an opportunity to address it. (*Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 732, fn. 2 [considering new ground for demurrer argued for the first time on appeal].) Whether Dr. Parabia has adequately alleged an actionable misrepresentation is a pure question of law. Dr. Parabia responded to this argument on the merits in her reply brief without arguing waiver or forfeiture. The argument is thus properly considered on appeal.

13

opinions, which are not actionable. (*Ibid.*; *Neu–Visions Sports v. Soren/McAdam/Bartells* (2000) 86 Cal.App.4th 303, 309–310.)

On appeal, Dr. Parabia argues that she stated a claim for negligent misrepresentation based solely on the allegation that Wells Fargo employee Melissa "instructed Borrower to stop making the payments on the mortgage until the mortgage terms were reset."[7] Dr. Parabia argues that this instruction from Melissa is sufficient to constitute negligent misrepresentation of an existing material fact. She relies on *Ragland, supra*, 209 Cal.App.4th at pp. 196–197 to support this contention.

*Ragland* does not support Dr. Parabia's position. The *Ragland* court did not address the sufficiency of the alleged misrepresentations, as it appears the defendant there contested only the reliance and damages elements of the misrepresentation claim. (*Ragland, supra,* 209 Cal.App.4th at pp. 196–199.) An opinion is not authority for propositions not considered. (*Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659, 680.) *Ragland* contains no analysis of whether there was any actionable misrepresentation as to an existing or past fact.

Even if the *Ragland* court had considered the issue, however, it would still be factually distinguishable. The alleged misrepresentations in *Ragland* were more detailed than those in Dr. Parabia's complaint and included at least two clear statements of existing fact: (1) that the plaintiff's loan was not " 'behind' " at the time in question; and (2) her loan modification request was already prequalified at that time. (*Ragland, supra,* 209 Cal.App.4th at pp. 196–197.) Here, by contrast, Dr. Parabia bases her misrepresentation

---

[7] The first amended complaint references various other statements allegedly made by Wells Fargo employees, but Dr. Parabia has not mentioned them in her briefing on appeal or argued that they constitute actionable misrepresentations. Accordingly, we do not address them.

14

claim on statements indicating that the terms of her loan with Wells Fargo "could be renegotiated" in the future and that she should stop making her loan payments "until the mortgage terms were reset" at some point in the future.

Such a statement about performing at some future time is an opinion or prediction and is not actionable as a negligent misrepresentation.[8] (*Tarmann, supra*, 2 Cal.App.4th at p. 158.) In *Tarmann*, the plaintiff based her negligent misrepresentation claim on the defendant's statement that "it *would* pay for her repairs *immediately upon their completion*" and the defendant's subsequent failure to do so. (*Ibid.*) The court found that the "critical alleged misrepresentation . . . did not involve a past or existing material fact. Rather, it involved a promise to perform at some future time." (*Ibid.*) It was therefore not actionable. (*Ibid.*; see also *Hooked Media Group, Inc. v. Apple Inc.* (2020) 55 Cal.App.5th 323, 331 [defendant's representations that it would keep information confidential, not use any information it received from the plaintiff, and negotiate only with the plaintiff's CEO involved future events, not past or existing facts, and thus did not support a negligent misrepresentation claim].)

The same is true here. Construed most favorably to Dr. Parabia, her complaint alleges that Wells Fargo employees told her it was possible for her loan terms to be renegotiated (which was literally true) and that Melissa implicitly promised her that Wells Fargo would grant her loan modification request by instructing her to stop making payments until the loan terms were reset. Such predictions about the future are not misrepresentations of

_____

8    Dr. Parabia has never asserted a claim for promissory fraud or promissory estoppel. She did not allege the essential elements of such a claim in her first amended complaint, and does not argue on appeal that she could do so if granted leave to amend.

past or existing fact, and thus cannot form the basis for a negligent misrepresentation claim.[9]

In addition, Dr. Parabia failed to allege recoverable damages. On appeal, she does not appear to dispute that she cannot claim damages against Wells Fargo resulting from the ultimate loss of her Property, because she has not alleged how anything Wells Fargo did caused or contributed to the foreclosure by the State Bank of Texas on a different loan. Instead, Dr. Parabia argues that she can recover for her emotional distress, the time spent in the loan modification process, and the forbearance of other refinancing opportunities.

We disagree. Except in unusual circumstances not present here, emotional distress damages for negligent misrepresentation are not recoverable in the absence of physical injury. (*Branch v. Homefed Bank* (1992) 6 Cal.App.4th 793, 799–800.) As for the claimed forbearance damages, Dr. Parabia has failed to allege how refinancing the *Wells Fargo* loan could or would have prevented the foreclosure by a *different* lender on a *different* loan. Finally, Dr. Parabia did not allege in her complaint any damages for the time spent in the loan modification process, and even if she had, such nominal damages alone would be insufficient to state a claim. (*Lueras, supra,* 221

---

9    It is also questionable whether a mere *implied* assertion that the loan modification would be granted would be actionable, even if it concerned a past or existing fact. (*RSB Vineyards, LLC v. Orsi* (2017) 15 Cal.App.5th 1089, 1102 ["a cause of action for misrepresentation requires an affirmative statement, not an implied assertion"].) Moreover, Dr. Parabia's complaint never explicitly alleges that any of the statements by Wells Fargo employees were made " 'without reasonable ground' " for believing them to be true, as required for a negligent misrepresentation claim. (*Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 407–408.) Because Wells Fargo has not raised these issues, and we find the complaint deficient for other reasons, we need not consider them.

Cal.App.4th at p. 79 ["Time and effort spent assembling materials for an application to modify a loan is the sort of nominal damage subject to the maxim *de minimis non curat lex*—i.e., the law does not concern itself with trifles."].)  By contrast, in the case cited by Dr. Parabia, the plaintiff properly alleged forbearance damages against the lender that actually foreclosed on his home, *in addition* to "hundreds of hours" spent in unsuccessful loan modification negotiations, and the court further found he could possibly "plead a loss of equity in the property."  (*Rufini v. CitiMortgage, Inc.* (2014) 227 Cal.App.4th 299, 309 (*Rufini*).)

We therefore conclude that Dr. Parabia has not stated a claim for negligent misrepresentation.

IV

*Breach of Implied Covenant of Good Faith and Fair Dealing*

Dr. Parabia next asserts that she has sufficiently alleged a breach of the implied covenant of good faith and fair dealing claim based on Wells Fargo's conduct during the loan modification process and its instruction that Dr. Parabia stop making her loan payments.  She argues that Wells Fargo violated the implied covenant by losing documents, changing representatives, failing to provide certain information, instructing her to stop making her loan payments, and "in essence stringing Dr. Parabia along" for nine months throughout the loan modification application process.  Wells Fargo contends that Dr. Parabia has failed to plead a viable claim due to her failure to identify a contract provision requiring it to provide a loan modification or adequately allege that the lender deprived Dr. Parabia of the benefits of the parties' contract by directing her to stop payments.

Wells Fargo has the better argument.  Every contract imposes upon each party a duty of good faith and fair dealing in the performance of the

17

contract.  (*Carma Developers* (*Cal.*), *Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 374.)  The implied covenant of good faith and fair dealing "exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*.  [Citation.]  . . .  It cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement."  (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 349–350 (*Guz*); see also *Racine & Laramie, Ltd. v. Dept. of Parks & Recreation* (1992) 11 Cal.App.4th 1026, 1032 (*Racine*).)  Though "the implied covenant requires mutual fairness in applying a contract's actual terms, it cannot substantively *alter* those terms."  (*Guz*, at p. 327.)

We look to the underlying agreement between the parties to determine whether Dr. Parabia has stated a claim for breach of the implied covenant of good faith and fair dealing.  The first amended complaint does not quote or attach the agreement upon which the covenant claim rests, and Dr. Parabia has not alleged that the operative contract contains any language obligating the lender to modify, or consider any request from Dr. Parabia to modify, the terms of the loan.  Moreover, Wells Fargo correctly points out that the deed of trust does not contain a provision requiring Wells Fargo to consider or grant a loan modification request.

The implied covenant of good faith and fair dealing cannot impose an obligation on Wells Fargo to modify or consider modifying the loan terms if no such obligation exists in the parties' agreement.  (See *Guz*, *supra*, 24 Cal.4th at pp. 349–350.)  "When two parties, under no compulsion to do so, engage in negotiations to form or modify a contract[,] neither party has any obligation to continue negotiating or to negotiate in good faith.  Only when the parties are under a contractual compulsion to negotiate does the covenant of good

faith and fair dealing attach . . . ." (*Copeland v. Baskin Robbins U.S.A.* (2002) 96 Cal.App.4th 1251, 1260, fn. omitted; see *Sheen, supra,* 12 Cal.5th at p. 924, fn. 4; see also *Racine, supra,* 11 Cal.App.4th at pp. 1031–1033 [there can be no breach of implied covenant based on alleged lack of good faith in negotiating modified terms of contract where the defendant had no express obligation under existing contract to modify terms].) Dr. Parabia has not alleged the existence of a contractual requirement to consider or grant a modification of her loan, nor has she requested leave to amend to plead specific facts demonstrating such a requirement. Her failure to identify a contractual provision granting her the right to be considered for or obtain a loan modification compels us to conclude that Wells Fargo could not have breached the implied covenant in considering her request.

The two opinions on which Dr. Parabia rely are inapposite, as the lenders in those cases *were* alleged to have a contractual obligation to consider or grant a loan modification. (See *Lueras, supra,* 221 Cal.App.4th at p. 76; *Rufini, supra,* 227 Cal.App.4th at p. 308.) The covenant of good faith and fair dealing thus attached to the conduct relating to that contractual obligation. In *Lueras,* the contract at issue was a forbearance agreement, and it expressly required the lender to review the borrower's loan to determine " 'whether additional default resolution assistance can be offered.' " (*Lueras,* at p. 72.) The *Lueras* court also found that certain obligations imposed by the forbearance program in which the borrower was enrolled, including that the lender "*should work* with the borrower" to identify and implement a permanent foreclosure prevention alternative, "*should evaluate and identify*" a permanent loan solution, and "*should implement*" the alternative by the end of the deferral period, must be read into the parties' forbearance agreement. (*Id.* at p. 73.) The court concluded

19

that although the lender had no contractual duty to *offer* the plaintiff a loan modification, the contractual language imposed on the lender "a contractual duty to work with [the borrower] to identify the feasibility of, and implement, a foreclosure prevention alternative, and to do so in good faith." (*Id.* at p. 76.) Similarly, the *Rufini* court concluded that if the borrower could allege facts showing that the lender was contractually obligated to modify his loan, he must also be granted leave to allege a cause of action for breach of the implied covenant of good faith and fair dealing based on its refusal to do so. (*Rufini*, at p. 308.)

Perhaps recognizing this distinction, Dr. Parabia argues in her reply brief that her implied covenant claim is based not on the attempted loan modification, but rather on the instruction from a Wells Fargo employee to stop making loan payments, which changed her "loan from current to a loan in-arrears." She contends that this instruction "had the effect of destroying [her] rights" and deprived her of the benefits of the contract. But Dr. Parabia still fails to identify which contractual right or benefit was allegedly destroyed other than a right to a loan modification if she stopped making her payments, which we have already established she was not entitled to under the terms of the parties' agreement. (See *Guz*, *supra*, 24 Cal.4th at p. 350.)

The trial court properly sustained the demurrer to Dr. Parabia's breach of the implied covenant of good faith and fair dealing claim.

V

*Leave to Amend*

We must reverse a judgment sustaining a demurrer if there is a reasonable possibility that any defect can be cured by amendment. (*Minnick v. Automotive Creations, Inc.* (2017) 13 Cal.App.5th 1000, 1009.) The plaintiff's burden of proving this possibility "is not pro forma." (*Green Valley*

*Landowners Assn. v. City of Vallejo* (2015) 241 Cal.App.4th 425, 432 (*Green Valley*).)  Rather, the " ' "plaintiff must clearly and specifically set forth . . . factual allegations that sufficiently state all required elements of that cause of action.  [Citations.]  Allegations must be factual and specific, not vague or conclusionary." ' " (*Ibid.*)

Dr. Parabia contends that the trial court abused its discretion by sustaining the demurrer without leave to amend.  But she has not offered any specific factual allegations demonstrating how she would amend her first amended complaint to correct the multiple defects.  Dr. Parabia's cursory statement that the record shows there is a reasonable possibility she could cure the defects is neither specific nor factual.  (See *Green Valley, supra,* 241 Cal.App.4th at p. 432.)  Moreover, the trial court had already given Dr. Parabia leave to amend once before when it granted Wells Fargo's earlier motion for judgment on the pleadings.  We therefore conclude the trial court did not abuse its discretion by declining to give Dr. Parabia yet another opportunity to amend.

## DISPOSITION

The May 5, 2021 judgment sustaining the demurrer without leave to amend is affirmed.  Respondent is awarded its costs on appeal.


BUCHANAN, J.

WE CONCUR:


McCONNELL, P. J.


HUFFMAN, J.